[Crim. No. 10243. Fourth Dist., Div. Two. Jan. 18, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
IVAN Von STAICH, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Edward H. Schulman, Deputy State Public Defender, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

OPINION

GARDNER, P. J.—In this case we remonstrate, undoubtedly with complete futility although with considerable sincerity, against the indefensible position in which the Courts of Appeal are placed by *People* v. *Wende* (1979), 25 Cal. 3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], in its current impression of *Anders* v. *California* (1966), 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396]. We respectfully suggest a reexamination of *Wende* and at the same time a rewriting of some of the language of *People* v. *Feggans* (1967), 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21].

In this case, the defendant was convicted of escape. We appointed counsel, the State Public Defender, to represent him. Counsel filed a brief which contains a statement of the case, a statement of facts, and a statement of the "principal issue at trial" which contention is set forth as follows, "Were the findings of the jury supported by substantial evidence?" Under the admonition of *Wende*, counsel then requested this court to conduct an independent review of the entire appellate record in order to determine for itself whether the appeal contained any arguable appellate issues. Counsel did not withdraw from the case. He has not described the appeal as frivolous. He advises that he has been unable to ascertain from the record any arguable appellate issue and that he has written to the appellant informing him of his right to file a supplemental brief. No such brief has been filed.

Consistent with the admonition of *Wende*, we have undertaken a review of the "entire record" to determine whether arguable issues exist. We find none but in the process we feel constrained to register some protest against the mandate of *Wende* and incidentally with some of the

language of *Feggans.* We agree with the dissent in *Wende* that the procedures we have just undertaken in this case are not mandated by *Anders.*

Let's take this problem step by step.

First, we state that "we" have examined the record. In this case the author of this opinion has read the entire record. This involves a reporter's transcript in excess of 500 pages and a clerk's transcript in the neighborhood of 80 pages. This took a considerable amount of time and we are sure that the State Public Defender was involved in as much or more consumption of time in looking for an arguable issue. We will discuss the details later in this opinion. The point is that when we state that "we" have read this record, this is not a completely honest statement. Obviously, the other two members of this panel did not undertake any such study. They relied upon the author of the opinion. As in *Wende*, when the author of that opinion said, "*We* have undertaken a review of the entire record," no one is naive enough to believe that all seven members of the Supreme Court read that record. It meant that the author of the opinion or a research attorney under his direction had done so. Thus, rather obviously, the statement that "the court" has examined the record is hardly accurate. On the other hand, when an attorney appointed by the court has examined the record and reports to us that he or she has done so, that statement means exactly what it says.

Second, in reviewing such a record a judge is put in an awkward position. Judges are disciplined to approach all matters with complete objectivity. Combing a record for error strains this objectivity. Unconsciously, one becomes an advocate. One discovers that which may develop into an arguable issue and instinctively the hunt is on. The line between advocacy and decision making should never be blurred. It is in this type of proceeding.[1]

---

[1] Ed Lascher in commenting on *Wende* in the December 1979 issue of the California State Bar Journal made the following observation, at pages 521-522:

"Given competent and vigorous representation, however (and bearing in mind that I think that should not be just given but guaranteed), it seems to me somebody has the algebra way out of shape when a court has an obligation to become advocate. I somehow have this interesting vision of a dialogue at the weekly conference on whether to affirm or reverse a conviction: "Although the appellant and his counsel weren't able to come up with any plausible argument I, Justice Jones, in my capacity as para-advocate, have come up with Argument 23(b) and, would you believe it, I find myself persuaded by my argument."

Third, this involves an unconscionable amount of time which could be better spent in more productive judicial pursuits. In the average case, counsel have presented some well defined and well argued issues. It is a comparatively simple task to resolve these issues by reference to the briefs, to such portions of the record as may become necessary and such independent research as is necessary. However, in the time involved in going through this transcript and checking the use notes in CALJIC to be sure there were no instructional errors, several "normal" opinions could have been written.

Fourth, *Feggans* says that counsel should present any "arguable" issues. To us an arguable issue means an issue of sufficient substance that it is going to result either in a reversal or a modification of the judgment or is going to make new law.[2] This whole process of appellate review is not some kind of a WPA project for the continued employment of judges, lawyers, secretaries, clerks, book sellers and office equipment salesmen. Hopefully, we do not engage in a process of setting up straw men and then knocking them down in a search for "arguable" issues. We think *Feggans* should be rewritten in order to clarify this concept.

Fifth, this procedure puts the Attorney General in an awkward position. If a member of this court finds an issue to be arguable, that means it is arguable from the standpoint that if it has merit he or she thinks we are involved in a prejudicial error situation. This must put the Attorney General in something of a quandary since it would appear that at least two strikes have already been called upon him. He must wonder if perhaps the hypothetical conversation suggested by Ed Lascher has not taken place. He is called upon to respond to an issue that the court has already found to be of such merit that, if sustained, modification or reversal will result. We say this with all due respect to the sentence in *Wende* which suggests that if a contention is reasonably arguable, the court must appoint another counsel to argue the appeal "no matter how the court feels it will probably be resolved." That latter sentence involves a practice in mental gymnastics almost beyond comprehension.

Sixth, as the dissent in *Wende* pointed out, the Supreme Court in *Anders* did not impose any duty on the appellate court to examine the

[2]But see *People* v. *Scobie* (1973) 36 Cal.App.3d 97 [111 Cal.Rptr. 600], which observed that under *In re Smith* (1970) 3 Cal.3d 192 [90 Cal.Rptr. 1, 474 P.2d 969], and *People* v. *Rhoden* (1972) 6 Cal.3d 519 [99 Cal.Rptr. 751, 492 P.2d 1143], there is an obligation to argue "arguable-but-unmeritorious" issues. All we can say is that the issue is cloudy and needs clarification.

"record" if counsel has already done so and submitted a brief similar to the brief filed in this case. *Anders* required that the appellate court make a full examination of the "proceedings" in determining the merit, if any, of the appeal. When counsel, in whom we repose faith, has filed a brief stating that he or she has examined this record and found no arguable issue, it appears to us that our examination of the "proceedings" does not necessitate a complete examination by this court of the entire "record."

Seventh, a review of the record, without recourse to the defendant and to his trial attorney, is a frustrating and not very efficient practice. For example, a seemingly glaring example of inadequacy of counsel may appear on the record, yet when the defendant and his attorney are contacted, it becomes clear that the decision not to pursue a seemingly meritorious course was well reasoned and agreed upon as part of an overall trial strategy. It may be that counsel and his client have decided that because of the state of public opinion, the case should be tried promptly. They, therefore, intentionally ignore some possibly meritorious but time consuming motions. On the record there would appear to be inadequacy but upon consultation it would become clear that it was a proper, if unsuccessful, trial tactic.[3]

Having unburdened ourselves of the above, we now hasten to point out that this, fortunately, was a rather interesting case to review.

The defendant was originally charged with arson. He then escaped from jail and was charged with escape. The two actions were consolidated at the request of the prosecution and without objection from the defendant. We need not recite the facts relating to the arson because the jury found the defendant not guilty of that offense. Nevertheless, it was necessary to read the full record of the arson case in order to ascertain whether anything developed during that presentation that had anything to do with the escape case.

The facts of the escape case are really quite simple. Defendant was in the Riverside County jail on the arson charge. A prisoner named Lopez was to be released. The defendant identified himself as Lopez and left. He was apprehended three and one-half months later in Vacaville. At

---

[3]In all of the cases in which we assign appellate counsel, we recommend that counsel contact both the defendant and his trial counsel. We deem it singularly inappropriate for us to do so.

trial, he said that he left because he was upset about being in custody for something he did not do.

Reviewing this record is probably one of the silliest projects ever undertaken by an appellate court. Whatever the legislative or judicial grumblings have been about the office of the State Public Defender, no one has ever accused that office of a lack of thoroughness, enthusiasm or scholarship. Their work is outstanding. After the State Public Defender has said there are no arguable issues, our subsequent review in this case might be compared to touching up a Rembrandt, proofreading Shakespeare or editing a speech by Winston Churchill.

■ We find ourselves unable to detect any arguable issues in this case. The consolidation might have presented an intriguing issue had the defendant been convicted of arson. It could be argued that it was an indication of inadequacy of counsel to let the defendant be tried on an escape case for which there was no defense at the same time he was being tried on an arson for which there was a defense. However, since he was acquitted of arson, that argument disappears. Of course, to really inquire into that matter would necessitate a contact between ourselves and trial counsel which, as we have indicated, we do not feel appropriate under *Wende* or any other authority. This hypothetical just points up the ridiculous position in which *Wende* places us.

Unless we are to advocate a change of the law by which a person who reasonably believes in his innocence has the right to peacefully escape, there are no arguable issues in this case.[4] The escape charge was proven beyond a reasonable doubt—and without any error in the record. Defendant's defense is an unacceptable defense and this whole thing has been a complete waste of the time of this court with no appreciable benefit to the defendant or to the administration of justice.

Judgment affirmed.

Kaufman, J., and Campbell, J.,* concurred.

[4]Thanks, no. We went far enough, if not too far, in *People* v. *Lovercamp* (1974), 43 Cal.App.3d 823 [118 Cal.Rptr. 110, 69 A.L.R.3d 668].
*Assigned by the Chairperson of the Judicial Council.