[No. A067229. First Dist., Div. Two. July 20, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY RAY HACKETT, Defendant and Appellant.

COUNSEL

Frances M. Ternus, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, and Susan E. Myster, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

HAERLE, J.—This is an appeal pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] (hereafter *Wende*) from a conviction, after a plea of no contest, on charges of robbery (Pen. Code, § 211), attempted carjacking (Pen. Code, §§ 215/664), possession for sale of rock cocaine (Health & Saf. Code, § 11351.5) and child abuse (Pen. Code, § 273a, subd. (1)), and from the six-year prison term sentence imposed by the trial court for that conviction. We find no error in the postplea proceedings and hence affirm. However, in the process, we respectfully suggest that, for the reasons discussed at length below, it is appropriate for our Supreme Court to reexamine the vitality of *Wende*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

About 8:30 a.m. on the morning of November 15, 1993, Denise Earl (Earl), a medical assistant and certified phlebotomist, parked her 1990 Thunderbird in the parking lot of the doctors' office building where she worked in Antioch and started toward the door of that building. She was, at the time, three and a half months pregnant. After she locked her car and started moving up a pathway from the parking lot to the door to the building, she noticed two men standing by a fence near the walkway. One was wearing a ski mask. As Earl walked quickly toward the office building door, the two men came up behind her; the one without the mask used his arm to prevent her from opening the door. The one with the mask said: "Bitch, give me your keys." With that, according to the police report, he "struck her in the face with his open right palm causing the back of her head to strike against the door." Frightened, Earl threw her car keys to the ground; the two men rushed to get them and then to the Thunderbird. Earl quickly entered

her building and she and a coworker called 911. While talking to the 911 operator, Earl was able to look out a window and watch the two men try to start her car. As they did so, the one wearing the ski mask raised that mask sufficiently to give Earl a good look at his face from just a few feet away. In court she identified that man as appellant.

Appellant and his confederate, unable to start Earl's Thunderbird because its ignition-deactivating alarm had been set, hastily exited the location via another car. Within a short time, however, they left that car and tried to escape separately on foot. As the police pursued, appellant was seen jumping over fences accompanied by a small child, later identified as his two-year-old son. Other witnesses told police that appellant had thrown the boy over several fences as he tried to escape; when appellant was finally captured (his confederate was also), the two-year-old boy was visibly hurt and screaming.

A search of appellant revealed about 40 lumps of rock cocaine; $780 in cash was also concealed in his socks. Both he and his confederate, a juvenile, were promptly identified by Earl.

Appellant was charged with the four counts noted above. The information also alleged that appellant was ineligible for probation pursuant to Penal Code section 1203, subdivision (e)(4), because of two prior felony convictions. At his February 1994 arraignment, he pled not guilty to the charges but, after three days of trial two months later, changed his plea to no contest and admitted the probation ineligibility clause. He requested immediate sentencing and got it: the upper term of six years on the child abuse count and concurrent midterms of three and four years, respectively, on the robbery and cocaine-for-sale counts. Sentencing was stayed pursuant to Penal Code section 654 on the carjacking count. In sum, appellant was sentenced to prison for a term of six years, with two hundred twelve days presentence credit, and ordered to pay a $200 restitution fine.

This court granted appellant's counsel's motion to file a late notice of appeal; when filed, that notice complied with California Rules of Court, rule 31(d) in that it purported to appeal only from sentencing issues arising after appellant's no contest plea.

When appellant's opening brief was filed in May of 1995 (after two extensions of time and one "thirty day letter" from this court) its "Discussion" consisted only of the following standard form "*Wende* brief" language: "Pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], this court is requested to independently review the entire record on appeal in order to determine, for itself, whether it contains any arguable

issues. [¶] As noted by the Supreme Court in *Wende* at 441-442: 'We conclude that *Anders* [*Anders* v. *California* (1967) 386 U.S. 738 (18 L.Ed.2d 493, 87 S.Ct. 1396)] requires the court to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous. This obligation is triggered by receipt of such a brief from counsel and does not depend on the subsequent receipt of a brief from the defendant personally.' [¶] In accordance with this *Wende* procedure and the attached declaration of counsel, this court is requested to conduct an independent review of the entire record on appeal."

That portion of the brief is followed by a declaration of counsel which is also a standard form in these cases. It reads: "1. I am an active member of the California State Bar. [¶] 2. I am appointed counsel on appeal for appellant. [¶] 3. I have thoroughly reviewed the entire record on appeal in this case. [¶] 4. Based upon my review of this case, I have determined that a brief pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] is appropriate in this case. [¶] 5. I have written to appellant at his last known address and advised him that a *Wende* brief would be filed in this case, and I am serving a copy of this brief on appellant in conjunction with the filing of the brief. [¶] 6. I have advised appellant that he is entitled to tender to the court a written statement of any issues which he wishes to call to the attention of the court. [¶] 7. I do not request to be relieved as counsel, and I remain available to file any further briefs the court might request. I have, however, advised appellant that he has the right to request of the court that the court relieve me as appointed counsel."

## II. DISCUSSION

As the foregoing recitation makes clear, we are thus presented with a rather standard *Wende* appeal. We shall, in due course, dispose of it as required by that decision. However, before doing so, we feel compelled to discuss the past, present and possible future of the *Wende* doctrine.

### A. *Wende and Its Ancestry.*

By way of introduction to this subject, we can do no better than to quote from Justice Sims of the Third District who, in *People* v. *Placencia* (1992) 9 Cal.App.4th 422 [11 Cal.Rptr.2d 727], briefly summarized the background of *Wende* in the following words: "Since 1963, an indigent defendant in a criminal case has had the right to appointed counsel on the first appeal. [Citation.] Until 1967, appointed counsel was required to file only a 'no merit' letter when no meritorious issues were found. [Citation.] In *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], the United

States Supreme Court held such a practice unconstitutional. In order to ensure the indigent defendant received equal access to justice, *Anders* required appointed counsel to act in the role of an 'active advocate.' (*Id.* at pp. 742-744 [18 L.Ed.2d at pp. 497-498].) [¶] *Anders* set forth a procedure for appointed counsel to follow. If, after examining the record, counsel found the case was 'wholly frivolous,' counsel was required to advise the court and seek permission to withdraw. That request was to be accompanied by a brief setting out anything in the record that might arguably support the appeal. Counsel also was required to provide the indigent defendant with a copy of the brief; the latter was given the opportunity to raise any points he chose. Finally, the court was required to examine the record and determine whether the appeal was a frivolous one. ([*Id.*] at pp. 744-745 [18 L.Ed.2d at pp. 498-499].)" (*People* v. *Placencia, supra,* 9 Cal.App.4th at pp. 424-425.)

For present purposes, two aspects of *Anders* deserve further elaboration. In the first place, it should be noted that, in it, the Supreme Court strongly stressed the desirability, indeed almost the necessity, of the *advocacy of counsel.* It stated: "[Counsel's] role as advocate requires that he support his client's appeal to the best of his ability." (*Anders* v. *California* (1967) 386 U.S. 738, 744 [18 L.Ed.2d 493, 498, 87 S.Ct. 1396].)

Second, the Supreme Court also reemphasized the constitutional goal behind the requirement it was laying down, to wit, to assure equality for indigent appellants as compared to those able to retain counsel: "This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. . . . This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." (*Anders* v. *California, supra,* 386 U.S. at p. 745 [18 L.Ed.2d at pp. 498-499].)

Our Supreme Court had its first opportunity to consider the impact of *Anders* in *People* v. *Feggans* (1967) 67 Cal.2d 444, 447-448 [62 Cal.Rptr. 419, 432 P.2d 21]. In that case, it directed California's courts to apply *Anders* as follows: "Counsel must prepare a brief to assist the court in understanding the facts and the legal issues in the case. The brief must set forth a statement of the facts with citations to the transcript, discuss the legal issues with citations of appropriate authority, and argue all issues that are arguable. Moreover, counsel serves both the court and his client by advocating changes in the law if argument can be made supporting change. If counsel concludes that there are no arguable issues and the appeal is frivolous, he may limit his brief to a statement of the facts and applicable

law and may ask to withdraw from the case, but he must not argue the case against his client. Counsel is not allowed to withdraw from the case until the court is satisfied that he has discharged his duty to the court and his client to set forth adequately the facts and issues involved. If counsel is allowed to withdraw, defendant must be given an opportunity to present a brief, and thereafter the court must decide for itself whether the appeal is frivolous. [Citations.] If any contention raised is reasonably arguable, no matter how the court feels it will probably be resolved, the court must appoint another counsel to argue the appeal."

Nothing was said in *Feggans* as to any requirement of a full "independent" judicial examination of the lower court record.

The rule of *Anders* and *Feggans* was the law in this state until 1979 when *Wende* was decided. In its opinion, the majority of the court held that *Anders* requires a court of appeal "to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Wende, supra,* 25 Cal.3d at p. 441.) The court recognized that, under such a standard, counsel might obtain a more complete review when no arguable issues are found than when specific issues are raised, since review of the entire record is not necessarily required in the latter situation. (*Id.* at p. 442.) However, the court, asserting that its holding was compelled by *Anders*, expressed confidence that counsel would continue thoroughly to review the record and raise all arguable issues. (*Ibid.*)

Justice Clark dissented, contending that nothing in *Anders* or *Feggans* required a process such as the majority was mandating. He stated: "The majority now require an appellate court to abandon its traditional role as an adjudicatory body and to enter the appellate arena as an advocate. Whatever the right of a person convicted of crime to an appeal, an appellate court cannot be burdened first, with determining what contentions should be urged on appeal and then, with resolving those contentions." (*Wende, supra,* 25 Cal.3d at pp. 443-444 (conc. and dis. opn. of Clark, J.).)

But the key point of disagreement between the majority and Justice Clark was whether in fact *Anders* mandated the totally independent court review of the record that the majority said it did. The majority based its affirmative answer to this question on the language from *Anders* which requires the court, "after a full examination of all the proceedings, to decide whether the case is wholly frivolous." (*Anders* v. *California, supra,* 386 U.S. at p. 744 [18 L.ED.2d at p. 498].) Justice Clark, in response, noted that the language from *Anders* upon which the majority relied came *after* the Supreme Court had laid down the requirement of what has subsequently become known as

an "*Anders* brief," and should, therefore, be understood as a requirement ancillary to such a brief, not independent of it. His view was: "Thus the appellate court shall respond only to issues raised *to* it, not to issues raised *by* it." (*Wende, supra*, 25 Cal.3d at p. 445 (conc. and dis. opn. of Clark, J.).)

B.  *Wende Since 1979.*

It is an understatement to say that *Wende* has had a mixed reception in the 16 years since it first appeared. Indeed, one of its earliest receptions was also undoubtedly one of its most hostile. Three months after it had seen the light of day, it was greeted by a literal fusillade of criticism by Justice Gardner of the Fourth Appellate District in *People* v. *Von Staich* (1980) 101 Cal.App.3d 172, 174-176 [161 Cal.Rptr. 448]. That court excoriated the Supreme Court's majority on the grounds, inter alia, that the decision (a) improperly blurred the line between advocacy and decision making, (b) would necessarily involve "an unconscionable amount of time which could be better spent in more productive judicial pursuits," and (c) was not at all mandated by *Anders*, among other things. However, prophetically, that court also noted that, although its remonstrations about *Wende* were both strong and sincere, they were probably being expressed "with complete futility." (*Id.* at p. 173.)

At first, that indeed seemed to be the case. The Courts of Appeal of course adhered to *Wende*, and some even took its mandate a few steps further. For example, it was held that *Wende* applied with equal force to misdemeanor appeals to the appellate departments of the superior courts (*In re Olsen* (1986) 176 Cal.App.3d 386, 389-392 [221 Cal.Rptr. 772]), to a conservatorship proceeding (*Conservatorship of Besoyan* (1986) 181 Cal.App.3d 34, 38 [226 Cal.Rptr. 196]), to a termination of parental rights proceeding (*In re Joyleaf W.* (1984) 150 Cal.App.3d 865, 868-869 [198 Cal.Rptr. 114]), to dependency proceedings (*In re Brian B.* (1983) 141 Cal.App.3d 397, 398-399 [190 Cal.Rptr. 153]), and even to paternity actions (*County of Madera* v. *Jacobson* (1987) 194 Cal.App.3d 569, 573 [239 Cal.Rptr. 602]).

However, during the same period there were also decisions declining to expand *Wende*. For example, courts have refused to expand *Wende* to civil cases generally. (*Berger* v. *Godden* (1985) 163 Cal.App.3d 1113, 1117, fn. 2 [210 Cal.Rptr. 109]; *Grillo* v. *Smith* (1983) 144 Cal.App.3d 868, 873, fn. 3 [193 Cal.Rptr. 414].) Courts have also declined to expand *Wende* by denying partial independent review when counsel has raised at least one issue on appeal. (*People* v. *Johnson* (1981) 123 Cal.App.3d 106, 110 [176 Cal.Rptr. 390].) And in *People* v. *Placencia, supra*, 9 Cal.App.4th 422, the court held that *Wende* did not apply to retained (as distinguished from appointed) criminal defense counsel. Finally, just two months ago, Division Four of this

court held the opposite of the courts in *Brian B.*, *supra*, 141 Cal.App.3d 397, and *Joyleaf W.*, *supra*, 150 Cal.App.3d 865, i.e., that *Wende* does not extend to termination of parental rights proceedings. (*Ronald S.* v. *Superior Court* (1995) 34 Cal.App.4th 1467 [41 Cal.Rptr.2d 139].)[1]

Perhaps more significantly, however, over the past several years writers in legal journals have begun to suggest that the time has come to reevaluate *Wende*. The first shot on this front was fired by Administrative Presiding Justice Carl Anderson of this district who, in a 1993 law review article, suggested that (a) *Wende* went far beyond anything required by *Anders*, (b) in any event it was not necessary, and (c) the process mandated by it was an unjustified burden on the Courts of Appeal.[2] His points were reinforced and expanded upon a year later by Professor J. Clark Kelso writing in the Hastings Law Journal.[3] Professor Kelso noted that, among other things, the *Wende* process does not protect a defendant's Sixth Amendment right to the effective assistance of counsel, that it provides an appellant who avails himself of it with arguably a more thorough review than one with a counsel who diligently searches out issues for review, that it confuses the role of advocate with that of judge, and that it appears to waste state resources. Professor Kelso concluded his comments on this issue by suggesting that more recent United States Supreme Court decisions make clear that *Wende* went far beyond anything required by that court (a topic to which we shall shortly return).

Finally on this front, a few months after Professor Kelso's article appeared, writer Philip Hager summarized the negative comments of Presiding Justice Anderson (and several of his colleagues on other Courts of Appeal), Professor Kelso, and others. He also provided some statistics to support Professor Kelso's suggestion of a "waste [of] state resources."[4]

C.  *Relevant United States Supreme Court Cases Since Anders and Wende.*

As just noted, Professor Kelso suggested in his 1994 article that more recent United States Supreme Court decisions particularly suggested a review of *Wende*. We agree.

---

[1] A related issue to that decided in *Ronald S.* v. *Superior Court* is now before our Supreme Court in another dependency case, *In re Angela G.*▮ (Cal.App.).

[2] Anderson, *Are the American Bar Association's Time Standards Relevant for California Courts of Appeal?* (1993) 27 U.S.F. L.Rev. 301, 336-339.

[3] Kelso, *A Report on the California Appellate System* (1994) 45 Hastings L.J. 433, 460-463.

[4] Hager's article states: "In Los Angeles's Second District Court of Appeal, Wendes last year constituted more than 20 percent of the criminal dispositions; in San Francisco's First District, they made up more than 24 percent. Meanwhile, courts rarely find issues worth formal review, and even more rarely—far less than 1 percent of the time—do they find a Wende case that results in a reversal or a modification." (Hager, *An Appeal Losing Appeal* (May 1994) 14 Cal.Law. 43.)

There are four cases decided since 1983 by the United States Supreme Court that are particularly noteworthy in this connection. The first is *Jones* v. *Barnes* (1983) 463 U.S. 745 [77 L.Ed.2d 987, 103 S.Ct. 3308], which held that nothing in *Anders* required an appointed criminal defense counsel, in appealing his client's conviction, to argue every issue his client requested him to argue, even apparently "non-frivolous" ones. In reversing a Second Circuit decision to the contrary, the court held: "This Court's decision in *Anders*, far from giving support to the new *per se* rule announced by the Court of Appeals, is to the contrary. *Anders* recognized that the role of the advocate 'requires that he support his client's appeal to the best of his ability.' [Citation.] Here the appointed counsel did just that. For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*. Nothing in the Constitution or our interpretation of that document requires such a standard." (*Id.* at pp. 753-754 [77 L.Ed.2d at pp. 994-995].)

In the course of reaching this conclusion, the court also noted that the historical ancestors of *Anders* were based on the fundamental proposition that ". . . if an appeal is open to those who can pay for it, an appeal must be provided for an indigent." (*Jones* v. *Barnes, supra,* 463 U.S. at p. 751 [77 L.Ed.2d at p. 993].)[5]

The next time the United States Supreme Court revisited *Anders* in any significant way, it did so in a relative flurry of activity in 1987 and 1988, deciding three cases within an eighteen-month span. In the first of these, *Pennsylvania* v. *Finley* (1987) 481 U.S. 551 [95 L.Ed.2d 539, 107 S.Ct. 1990], the court held that *Anders* should not be read as recognizing a federal constitutional right to appointed counsel in postconviction proceedings, i.e., proceedings in the nature of a collateral attack after exhaustion of a first appeal. It said: "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals." (*Id.* at p. 555 [95 L.Ed.2d at p. 545].)

A year later, the court issued its decision in *McCoy* v. *Court of Appeals of Wisconsin* (1988) 486 U.S. 429 [100 L.Ed.2d 440, 108 S.Ct. 1895]. In that

---

[5]The Oregon Supreme Court, in a recent reexamination of the impact of *Anders* and its descendants on the criminal appellate practice in that state, apparently interpreted this passage in *Jones* as meaning that an appellate review of the entire record is *not* required because such a review would not be afforded to retained counsel. (*State* v. *Balfour* (1991) 311 Ore. 434 [814 P.2d 1069, 1080].)

case, an indigent defendant attacked a post-*Anders* Wisconsin Supreme Court rule which specified what appointed counsel could do if, as and when he or she determined that a contemplated appeal was frivolous. The rule permitted counsel to petition to withdraw from the case, but required that in so doing he or she must simultaneously file an *Anders*-style brief referring to "anything in the record that might arguably support the appeal," but also required that the brief include a discussion of why the issue lacks merit. The court held that the Wisconsin rule did not unduly restrict the appellant's constitutional rights as defined in *Anders*, stating: "The Wisconsin Rule is fully consistent with the objectives that are served by requiring that a motion to withdraw be accompanied by a brief referring to all claims that might arguably support the appeal. Unlike the typical advocate's brief in a criminal appeal, which has as its sole purpose the persuasion of the court to grant relief to the defendant, the *Anders* brief is designed to assure the court that the indigent defendant's constitutional rights have not been violated. . . . Instead of relying on an unexplained assumption that the attorney has discovered law or facts that completely refute the arguments identified in the brief, the Wisconsin court requires additional evidence of counsel's diligence. This requirement furthers the same interests that are served by the minimum requirements of *Anders*." (*Id.* at pp. 441-442 [100 L.Ed.2d at pp. 455-456].)

Three dissenting Justices pointed out that the requirement that withdrawing counsel state the basis for a conclusion that the arguments lacked merit arguably converted that counsel into an opponent of the appeal, something forbidden by *Anders*. The United States Supreme Court nevertheless upheld the Wisconsin rule; we suggest its decision is significant for present purposes for two reasons. In the first place, we think it is instructive that the Supreme Court never even hinted that perhaps an alternative to the Wisconsin procedure could be something akin to the *Wende* procedure adopted by our Supreme Court nine years earlier. Second, implicit if not explicit in *McCoy* would seem to be a sense of deference by the United States Supreme Court to efforts by a state Supreme Court to solve the knotty procedural problems deposited by the former on the doorsteps of the latter via *Anders*. The conclusion to be drawn from the first point is obvious; we suggest the conclusion compelled by the latter is that if the 1988 Wisconsin Supreme Court rule is valid under *Anders* surely also was the 1967 *Feggans* procedure in this state. Put another way, *McCoy* strongly suggests that, for *Anders* purposes, *Wende* was a trip that was something less than necessary.

The last of the 1987-1988 cases interpreting *Anders* was *Penson* v. *Ohio* (1988) 488 U.S. 75 [102 L.Ed.2d 300, 109 S.Ct. 346].[6] In *Penson,* the court soundly reaffirmed its basic holding in *Anders* and, in so doing, struck down an Ohio appellate court's order under which it (a) allowed an appointed appellate counsel for an indigent convicted defendant to withdraw without filing any sort of brief (on the basis that he declined to "file a meritless appeal in this matter"), (b) thereafter, and without appointing new counsel or otherwise hearing any advocacy on the part of the defendant, " 'independently review[ed] the record thoroughly to determine whether any error exists requiring reversal or modification of the sentence,' " (c) initially noted that counsel's certification that the appeal was meritless was " 'highly questionable,' " (d) thereafter found " 'several arguable claims' " which might be made by the defendant, including one instance of "plain error" regarding the instructions, (e) reversed the one conviction as to which the "plain error" related but confirmed the remaining convictions, and (f) in so doing, found that the defendant had suffered no prejudice by not having counsel argue his appeal because the court had "thoroughly examined the record" and also had had the benefit of the arguments of counsel for codefendants. (*Id.* at pp. 77-79 [102 L.Ed.2d at pp. 307-308].)

The Supreme Court thoroughly disapproved of this procedure. With only one dissent, it ruled that the Ohio court's actions in the case were inconsistent with the requirements of *Anders*, especially the very specific requirement that counsel, with or without withdrawing, file a brief "referring to anything in the record that might arguably support the appeal." (*Anders* v. *California, supra*, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498].) It also sharply criticized the Ohio procedure for (a) letting counsel withdraw before it had conducted its review of the record and (b) not appointing substitute counsel as and when it itself found arguable issues in the record.

But the court's most pointed indictment of the Ohio process, and the one most pertinent to a consideration of the continued viability of *Wende*, was its repeated emphasis on *the absolute imperative of advocacy*. Over and over again, the court noted that the process followed by the Ohio Court of Appeals conspicuously ignored the most important part of the *Anders* mandate: an appellate attorney aggressively advocating his client's rights: "It bears emphasis that the right to be represented by counsel is among the most fundamental of rights. We have long recognized that 'lawyers in criminal courts are necessities, not luxuries.' [Citation.] As a general matter, it is through counsel that all other rights of the accused are protected . . . . The

---

[6]In 1994 the Supreme Court issued its opinion in *Austin* v. *U.S.* (1994) 513 U.S. __ [130 L.Ed.2d 219, 115 S.Ct. 380]. It discusses the applicability of *Anders* to petitions for writs of certiorari to that court, but is not otherwise pertinent to this discussion.

paramount importance of vigorous representation follows from the nature of our adversarial system of justice. . . . Absent representation, however, it is unlikely that a criminal defendant will be able adequately to test the government's case . . . . [¶] The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage. Both stages of the prosecution, although perhaps involving unique legal skills, require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over." (*Penson* v. *Ohio, supra,* 488 U.S. at pp. 84-85 [102 L.Ed.2d at p. 311].)

We shall return shortly (pt. E, *post*) to the significance of this point.

D.  *Authority Outside of California Pertinent to the Wende Process.*

Almost all of the authority from other state Courts of Appeal and Supreme Courts on the application of *Anders* to their processes has been triggered by fact situations similar to that in *McCoy,* i.e., involving the issues of (a) whether, when and under what circumstances counsel may withdraw when he or she discerns that an appeal lacks merit, (b) what he or she must file before or contemporaneous with a request to withdraw, (c) whether new counsel must then be appointed, and/or (d) what the defendant may or may not do pro se in the course of all of this. (See, e.g., *Sweeney* v. *Leapley* (S.D. 1992) 487 N.W.2d 617; *In re Order of First Dist. Ct. of Appeal* (Fla. 1990) 556 So.2d 1114; *State* v. *Shattuck* (1984) 140 Ariz. 582 [684 P.2d 154]; *In re Welfare of Hall* (1983) 99 Wn.2d 842 [664 P.2d 1245]; *Commonwealth* v. *McClendon* (1981) 429 Pa. 467 [434 A.2d 1185]; *Commonwealth* v. *Moffett* (1981) 383 Mass. 201 [418 N.E.2d 585, 15 A.L.R.4th 566]; *People* v. *Gonzalez* (1979) 47 N.Y.2d 606 [419 N.Y.S.2d 913, 393 N.E.2d 987]; *High* v. *State* (Tex.Crim. 1978) 573 S.W.2d 807; *Holloway* v. *Hopper* (1975) 233 Ga. 615 [212 S.E.2d 795]; *State* v. *Pascucci* (1971) 161 Conn. 382 [288 A.2d 408]; *Darby* v. *State* (1971) 257 S.C. 200 [184 S.E.2d 699]; *People* v. *Hoffman* (1969) 382 Mich. 66 [168 N.W.2d 229, 36 A.L.R.3d 1199]; *Commonwealth* v. *Baker* (1968) 429 Pa. 209 [239 A.2d 201]; *People* v. *Jones* (1967) 38 Ill.2d 384 [231 N.E.2d 390].)[7]

The only states which have apparently explicitly considered the issue of whether *Anders* requires *the appellate court itself* to conduct an independent review of the record to determine if error exists are Oregon and Florida. The Supreme Court of Oregon, in an extended review of its processes for

---

[7]The best recent secondary surveys of this issue seem to be: Bains, *Termination of the Attorney-Client Relationship: How Far Must Anders Compliance Go?: A Survey of Decisions* (1991) 16 J. Legal Prof. 229; Junkin, *The Right to Counsel in Frivolous Criminal Appeals: A Reevaluation of the Guarantees of Anders* v. *California* (1988) 67 Tex. L.Rev. 181.

complying with *Anders*, recently answered the question in the negative: "The Court of Appeals shall consider and decide whatever issues are raised in these appeals in the same manner as it considers and decides issues that are raised in any other direct criminal appeal. *The Court of Appeals is not required to search the record for error, whether an appeal is filed by a person who has appointed counsel or retained counsel, because a defendant represented by retained counsel would not necessarily receive such a review on appeal.*" (*State* v. *Balfour, supra*, 814 P.2d at p. 1080, italics added.)

The Supreme Court of Florida, in a 1987 opinion, went somewhat in the opposite direction, and thus appears to be the only state Supreme Court on record in any way consistent with *Wende*.[8] In *State* v. *Causey* (Fla. 1987) 503 So.2d 321, 322, that court disapproved a prior appellate court holding and said that "some degree of independent review is required" to be made by the appellate court. However, immediately after saying this, it defined the scope of that review in very conservative terms: "This is not to say that we read *Anders* as requiring a 'fine tooth comb' style of review. By no means should this opinion be read to require district courts to read between the lines of a record to discover the most remote, unlikely error. At the very least, however, pursuant to *Anders*, in order to assure indigents fair and meaningful appellate review, the appellate court must examine the record to the extent necessary to discover any errors apparent on the face of the record." (*Ibid.*)

E.   *The Principal Reasons Why Wende Should Be Reconsidered.*

Our review of the cases, federal and state, and the limited literature available on this issue, combined with our own experience and observation of the *Wende* process, convinces us that it is now appropriate to suggest that our Supreme Court should reconsider *Wende*. We base this most respectful suggestion on six specific reasons:

1.   First and foremost, and as the United States Supreme Court's decision in *Penson, supra*, 488 U.S. 75, makes clear, *Wende* seems to miss the point of *Anders*. The essential point of *Anders* and its progeny is *advocacy*, i.e., the

---

[8]Some language in *Commonwealth* v. *McClendon, supra*, 434 A.2d 1185, 1188, might be construed as imposing a requirement similar to that of *Wende*. However, (a) it is clear from that opinion that, as Justice Clark noted in his dissent in *Wende*, any such review should be strictly ancillary to an *Anders* brief, and (b) apparently the lower appellate courts in Pennsylvania do not so interpret *McClendon*, as witness the following language from a 1985 opinion: "Such a result would render *Anders* meaningless. A court would have to conduct its own independent review of the record, making it, in effect, a defendant's 'counsel' searching for possible trial errors, or, if the court accepted counsel's conclusion (as may happen in practice), counsel would become the 'court' determining the merits of a defendant's appeal." (*Commonwealth* v. *McGeth* (1985) 347 Pa. Super. 333 [500 A.2d 860, 868, fn. 6] (conc. opn. of Hoffman, J.).)

necessity for indigent convicted criminal defendants to have available to them a constitutionally acceptable level of appellate advocacy. *Wende* substitutes for that a "form" brief (complete with a "form" declaration of counsel) followed by an "independent review" by the court and its staff of the record and then maybe[9] more effort by the appointed appellate attorney.

This off-the-point aspect of *Wende* was noted rather forcefully in a recent opinion of a panel of the United States Court of Appeals for the Ninth Circuit in *U.S. v. Griffy* (9th Cir. 1990) 895 F.2d 561. In that most interesting case, a·federal criminal defendant's counsel, perhaps forgetting what court he was in, filed a brief with the Ninth Circuit that said he had " 'located no specific issues' " to present to the court, but neither said the appeal was frivolous nor moved to withdraw. What he did say, however, was: " 'Accordingly, the court must review the record.' " With an almost audible "harumph," that court brushed aside the request, observing that, whether or not the process suggested was responsive to *Wende*, it was not to *Anders* as reaffirmed by *McCoy*: "*Anders* spells out what active advocacy requires of appointed counsel who concludes after a conscientious review of the record that the appeal is wholly without merit. . . . [¶] In contrast, the 'no-merit letter' procedure invalidated in *Anders*, *like the brief filed in this case*, 'affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate.' " (*Id.* at p. 562, italics added.)

The point of *Griffy* seems clear and unassailable: *Anders* insists upon appellate advocacy; *Wende* substitutes an "independent review" by court personnel; the two are not the same.

2. If *Wende* ever was required by *Anders*, it is certainly not after *McCoy*, which seems to make clear that reasonable state court efforts to comply with *Anders* will not be lightly invalidated. (See *ante*, at pp. 1305-1306.)

3. As both Justice Clark and Justice Gardner observed in their criticisms of the majority's view in *Wende*, the process it mandates confuses the role of court and advocate and does so unfairly to both. (See also Kelso, *A Report on the California Appellate System*, *supra*, 45 Hastings L.J. at p. 461.)

4. Since the *Wende* process is inapplicable to retained counsel (see *People* v. *Placencia*, *supra*, 9 Cal.App.4th at p. 428), as a constitutional proposition it need not be afforded to counsel for indigent defendants; it is, for this reason, unnecessary. (See *Anders* v. *California*, *supra*, 386 U.S. at p. 345 [18 L.Ed.2d at pp. 498-499]; *U.S.* v. *Griffy*, *supra*, 895 F.2d at p. 562; *State* v. *Balfour*, *supra*, 814 P.2d at p. 1080.)

---

[9]Although in a minute number of cases, see footnote 4, *ante*.

5. The *Wende* process places an unjustifiable burden and expense upon the Courts of Appeal. (See Kelso, *A Report on the California Appellate System, supra*, 45 Hastings L.J. at pp. 461-462 and Hager, *An Appeal Losing Appeal, supra*, 14 Cal.Law. at pp. 43-44.)

6. The final reason upon which we base our suggestion that *Wende* be reviewed afresh by our Supreme Court is that, in the many years since that decision, some of the basic facts of juridical life have changed. More specifically, effective January 1, 1985, the Judicial Council adopted rule 76.5 of the California Rules of Court. That rule directs each appellate court to adopt procedures for the appointment of counsel in criminal appeals for indigent defendants who are not represented by the State Public Defender. The rule requires the six Courts of Appeal to evaluate the qualifications of court-appointed attorneys and to match the attorney's qualifications to the demands of the case. The rule also authorizes the Courts of Appeal to contract with an administrator having substantial experience in handling criminal appeals to perform the functions authorized and directed by the rule.

Pursuant to California Rules of Court, rule 76.5, and with funding from the Legislature, the Judicial Council provided each Court of Appeal with an appellate project administrator and experienced staff to administer the court-appointed counsel program for each court. (It bears noting that this has been done at a not-inconsiderable cost to the taxpayers. In fiscal 1993-1994, for example, the cost for the appellate project statewide was approximately $11 million or nearly one-third of the total outlay for court-appointed counsel in the Courts of Appeal.)

The agency which operates in this district is the First District Appellate Project (FDAP). We are confident that FDAP employs both able and experienced lawyers in criminal law to assist and, where appropriate, supervise appointed counsel. FDAP and, as we understand it, the other appellate project administrators, are under contract to the court; their contractual duties include review of the records to assist court-appointed counsel in identifying issues to brief. If the court-appointed counsel can find no meritorious issue to raise and decides to file a *Wende* brief, an appellate project staff attorney reviews the record again to determine whether a *Wende* brief is appropriate. Thus, by the time the *Wende* brief is filed in the Court of Appeal, the record in the case has been reviewed *both* by the court-appointed counsel (who is presumably well qualified to handle the case) *and* by an experienced attorney on the staff of FDAP. In our view, this double review provides more than sufficient assurance that the record in each respective appeal has been carefully examined for error and, therefore, that a conclusion by counsel that the appeal is without merit is one upon which this court

can and should rely. Further independent review by the court, in the absence of any arguable claims raised directly by the indigent defendant, is thus not only redundant but wasteful of taxpayer monies.

### F. *Wende as Applied to This Record.*

Notwithstanding all that has gone before, *Wende* is still the law in this state; we are required to and will follow it here. (Cf. *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ We have, pursuant to *Wende*'s mandate, reviewed the record subsequent to the entry of appellant's plea. We note, first of all, that appellant was represented by counsel throughout the proceedings. Before entering his plea, appellant was advised of the constitutional rights he would be waiving and acknowledged that he waived those rights. Appellant was also advised of the direct consequences of his plea and knowingly and voluntarily pleaded nolo contendere.

There was no error in the sentencing process or the sentence, nor are there any legal issues that require further briefing

### III. CONCLUSION

The judgment is affirmed.

Smith, Acting P. J., and Phelan, J., concurred.

A petition for a rehearing was denied August 17, 1995.