[No. D023478. Fourth Dist., Div. One. Oct. 25, 1995.]

In re ANGELICA V., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
GUSTAVO V., Objector and Appellant.

COUNSEL

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd Harmon, County Counsel, Susan Strom, Chief Deputy County Counsel, Gary C. Seiser, Charles Nickell and James Wellman, Deputy County Counsel, for Petitioner and Respondent.

Carl Fabian, as Amicus Curiae, upon the request of the Court of Appeal, for Minor.

OPINION

FROEHLICH, J.*—This is an appeal from a judgment terminating the parental rights of appellant father, after a selection and implementation hearing pursuant to Welfare and Institutions Code section 366.26.[1] Counsel appointed for appellant filed a brief which summarized the procedural and factual background of the case, advised that no substantive issues warranting reversal on appeal could be identified,[2] and requested that this court review the record independently. We decline to undertake this review and hence, no

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified. Rule references are to the California Rules of Court.

[2] Nowhere in her brief does appellant's counsel specifically say to us that she cannot identify any grounds for appeal. However, in omitting to reference any such grounds, coupled with the request to this court that it undertake its own search for grounds for appeal, stating

grounds for appeal being raised by appellant's brief, we dismiss the appeal. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 508, 530, pp. 494, 514.)

Since we dismiss the appeal because no grounds for appeal were stated, a detailed recitation of the case background is unnecessary. However, to put the matter somewhat in perspective, we review the same cursorily. Appellant father and the mother of Angelica had several children, all of whom had been removed from their custody. At the time of Angelica's birth, all the children lived with their maternal grandmother. The mother was a drug addict who continued her habit during pregnancy with Angelica, resulting in removal of the child from parental custody shortly after birth. Appellant was in jail at the time of birth. He did not participate in the reunification program and appears to have been a very unreliable citizen. One of the social service reports indicated that from 1988 to the time of the hearing, he had been arrested six times for offenses including domestic violence, driving while intoxicated, possession of a deadly weapon and possession of a stolen vehicle. A report at the 12-month review indicated that appellant had had no contact with his children. He was served with notice of the section 366.26 hearing while in the Vista jail. By this time the grandmother had moved to Mexico with Angelica and her siblings and it was recommended, both by Mexican authorities and the department of social services, that she be approved for adoption of all the children. At the hearing, appellant did not explicitly oppose the permanent plan of adoption of Angelica but appeared and requested that a friend of his be considered as a potential adoptive parent. The court found Angelica to be adoptable, found that neither parent had maintained contact with her, concluded that further attempted contact with either parent would not be beneficial, terminated the parental rights of both parents, and referred Angelica for adoptive placement.

In asking this court to independently review the record in search of possible error, appellant refers to and relies upon *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. In that case the California Supreme Court, following what it conceived to be a mandate from the United States Supreme Court in *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], imposed upon Courts of Appeal the obligation to independently review the record whenever appointed counsel appealing a criminal conviction submits a brief which raises no specific issues. Appellant suggests that this authority, although derived from criminal process, is equally applicable to a dependency proceeding. ■ Thus, appellant argues that whenever a parent appeals from an order terminating parental rights and the appointed appellate counsel for the case can find no

specifically that the brief is filed "in accordance with the procedures outlined in *People* v. *Wende* [(1979) 25 Cal.3d 436 (158 Cal.Rptr. 839, 600 P.2d 1071)]," we construe the brief to so assert. This understanding was explicitly confirmed by counsel at oral argument.

specific grounds for appeal, it is incumbent upon the Court of Appeal to mount its own independent investigation of the record to verify that the report of appointed counsel is correct.

We do not accept this contention and in refusing to do so make two brief arguments. We abbreviate our presentation because this is a field twice plowed recently by other appellate courts. The first of these opinions, *In re Sade C.* (1995) 41 Cal.App.4th 1642 [44 Cal.Rptr.2d 509],* was originally published in March of this year, rehearing then granted, and the case republished with minor modifications very recently. The second was published as *In re Angela G.** (Cal.App.), and is no longer citable as authority because hearing has been granted by the Supreme Court. Although the second of these opinions no longer constitutes authority, both opinions are obviously now before the Supreme Court, and there would be little point in repeating the logic contained therein. We will endeavor, therefore, not to restate points already well made. The purpose of our opinion will be to emphasize our agreement with these two prior decisions, and to add certain comments which will reflect our own particular approach to the matter.

Our first contention, which we acknowledge to be in reliance on the references and reasoning contained in footnote 18 to Justice Croskey's opinion in *In re Sade, supra*, 37 Cal.App.4th at page 112, is that the *Wende* procedure has outlived whatever utility it may originally have had. The mandate of appellate review of the criminal record set forth in *Anders* was based on the United States Supreme Court's conclusion that appellate counsel had not devoted adequate attention to the case, and indeed may have acted more as amicus curiae to the court rather than as advocate for the convicted defendant. (*Anders* v. *California, supra*, 386 U.S. at p. 743 [18 L.Ed.2d at pp. 497-498].) As Justice Croskey pointed out, California's appellate practice and procedures have been greatly modified since 1967, providing much more efficient appellate review of indigent appeals than was possible in 1967. To recast his conclusion, in consideration of our present procedures for providing review by independent appellate agencies and specially appointed counsel, it is both redundant and wasteful of scarce judicial resources to require a replication of this same study by staff of the Court of Appeal. We believe it is time for California Supreme Court review of the basic *Wende* principle, in light of current circumstances.

Our second argument accepts the existence of the *Wende* requirement in criminal law, but rejects the propriety of its use in standard juvenile dependency cases. The basis for the contention that *Wende* review is appropriate

*Reporter's Note: *In re Sade C.*, review granted October 19, 1995 (S048796); *In re Angela G.*, review granted June 15, 1995 (S046327) and on December 14, 1995, review dismissed and cause remanded to Court of Appeal, First Appellate District, Division Four.

comes from two cases written by this court: *In re Brian B.* (1983) 141 Cal.App.3d 397 [190 Cal.Rptr. 153] (*Brian B.*) and *In re Joyleaf W.* (1984) 150 Cal.App.3d 865 [198 Cal.Rptr. 114] (*Joyleaf W.*). *Brian B.* was a very brief (somewhat over one page) opinion by "the court," which recognized that parental rights to custody of children are "fundamental," and that therefore there is "no valid reason to accord a parent . . . a lesser degree of review than is accorded a criminal defendant." (*Brian B.*, *supra*, at p. 398.) *Joyleaf W.* was a somewhat more extended exposition of the subject, but again determined that *Wende* review of dependency decisions should be afforded simply because the rights involved in separation of child from parent are of equal societal dignity to those recognized in review of criminal cases. (*Joyleaf W.*, *supra*, at p. 869.) Neither case traced the constitutional underpinnings of the *Anders* decision or made an attempt to equate those to the authority resulting in the requirement of appointment of counsel for dependency appeals. This failure was, in our view, fatal to the value of these opinions. It is appropriate that we, writing for the same court that issued these rulings, now reject them in light of changed circumstances and closer legal scrutiny. (See 9 Witkin, Cal. Procedure, *supra*, § 772, pp. 740-742.)

The *Anders* requirement of heightened appellate review was grounded in recognition that the right of representation in criminal cases is one of federal constitutional derivation. (*Anders* v. *California*, *supra*, 386 U.S. at pp. 742, 744 [18 L.Ed.2d at pp. 497, 498].) That the *Anders* rule would not apply in situations in which indigent representation was based on other than federal constitutional grounds was confirmed in *Pennsylvania* v. *Finley* (1987) 481 U.S. 551 [95 L.Ed.2d 539, 107 S.Ct. 1990]. There the court considered whether *Anders* would be applicable in a postconviction proceeding in which the appointment of counsel was required not by federal constitutional but by state statutory requirements. Chief Justice Rehnquist said *Anders* did not apply, stating: "Of course, *Anders* did not set down an independent constitutional command that all lawyers, in all proceedings, must follow these particular procedures. Rather, *Anders* established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel." (*Id.* at pp. 554-555 [95 L.Ed.2d at p. 545].)

 To determine, therefore, whether *Wende* review is required by federal authority in dependency cases, we must consider whether counsel's appointment in such cases is a federal "constitutional command." We find that it is not. The right to counsel in criminal cases is automatically of constitutional dimension. (*In re Kathy P.* (1979) 25 Cal.3d 91, 103 [157 Cal.Rptr. 874, 599 P.2d 65]; *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) The right to counsel in dependency cases, however, does not automatically rise to a constitutional

level. The governing federal authority is *Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18 [68 L.Ed.2d 640, 101 S.Ct. 2153]. The court there was faced with an appeal from termination of parental rights because the state court had not appointed counsel to represent the parent in the termination proceedings. The Supreme Court acknowledged that while the parent-child relationship is an important one warranting protection (*id.* at pp. 27, 31 [68 L.Ed.2d at pp. 649-650, 652]), the singular potential of loss of custodial/parental rights is not sufficient to rebut the presumption that, absent the potential of deprivation of physical liberty, as in criminal prosecutions, there is ordinarily no constitutional right to appointment of counsel (*id.* at p. 31 [68 L.Ed.2d at p. 652]). Rather, the question is whether the complexity of the issues to be resolved and the capacity of the parent to obtain a fair hearing without counsel impel the appointment. (*Ibid.*) The *Lassiter* rule was summarized in *In re Christina P.* (1985) 175 Cal.App.3d 115, 129 [220 Cal.Rptr. 525], as follows: "In *Lassiter* . . . the United States Supreme Court held that a federal constitutional due process right to appointment of counsel for parents at a [section] 232 hearing on termination of parental rights is a question for case-by-case resolution. The federal due process right is dependent upon the complexity of issues likely to be presented and the likelihood that assistance of counsel for the parent might sway the outcome." (Fn. omitted; see also *In re Justin L.* (1987) 188 Cal.App.3d 1068, 1073 [233 Cal.Rptr. 632] ["There is no federal constitutional right per se to be represented by counsel in all parental termination proceedings"].)[3]

■ Assuming, therefore, that there may be termination proceedings the complexity of which demand appointment of counsel on due process grounds, can it be said that this case falls within the group? We think not. As we noted above, appellant at the trial hearing neither asserted a personal interest in obtaining custody of the child nor made any objection to the proposed placement. In light of appellant's ambivalent position at trial, it is

---

[3]In *In re Arturo A.* (1992) 8 Cal.App.4th 229 [10 Cal.Rptr.2d 131] we discussed the right to counsel in dependency termination cases in the context of the assertion of reversible error by reason of ineffective assistance of appointed counsel. We noted that the right to appointed counsel in California for indigent parents defending a dependency issue is provided by statute and court rule (§ 317, subd. (b); rule 1412(h)(1)(B)), and stated that "There is also a due process constitutional right to representation by counsel on a case-by-case basis when the result of the hearing may be termination of parental rights. . . . Such a right will depend upon the complexity of the issues presented and the likelihood that counsel might sway the outcome." (8 Cal.App.4th at p. 238.) Later in our opinion we suggested that the constitutional right to counsel might depend more upon the potential result of the hearing (i.e., the possibility of termination of parental rights) rather than the complexity of the issues and the likelihood that the appearance of counsel might affect the outcome. (See *id.* at p. 239.) In light of the issues we face in this case, we more favor our initial analysis of the question, as stated in *In re Arturo A., supra*, at page 238, than our subsequent dictum.

difficult to see how the assistance of counsel could have altered the outcome. Also, there appears to have been nothing "complex" about the issues presented for determination. The case, as is usual in dependency proceedings, was fact driven—a presentation based on preexisting documentary evidence, to be resolved by a trial court rather than jury. As evidenced by appellate counsel's inability to identify any issue for appellate attention, this was a simple case. It cannot be said to rise to the level of difficulty requiring, under the *Lassiter* rule, the appointment of counsel.

Concluding, therefore, that the right to counsel in this case, as in most dependency cases, does not rest on federal constitutional requirements, we further conclude that neither *Anders* nor *Wende* is authority for the proposition that independent appellate review of the record is required when appointed appellate counsel files a *Wende* brief.

Is there any basis for contending that this in-depth investigation by the Court of Appeal should be undertaken on grounds other than constitutional? Is there a policy reason why it should be done? There is not.

The *Wende* principle, generally, even as applied to criminal cases, has been effectively criticized. (See, e.g., *People* v. *Wende*, *supra*, 25 Cal.3d at pp. 443, 444 (conc. and dis. opn. of Clark, J.); *People* v. *Von Staich* (1980) 101 Cal.App.3d 172, 173-175 [161 Cal.Rptr. 448]; *People* v. *Hackett* (1995) 36 Cal.App.4th 1297, 1303-1305 [43 Cal.Rptr.2d 219].) However, the most reliable critique of the effectiveness of *Wende* review would seem derived not from theoretical analysis but from the experience of the courts which administer it, namely the Courts of Appeal. We assert that our personal experience with the potential and actual application of the *Wende* principle is worthy of serious consideration.

Counsel are appointed in virtually all dependency trials when requested by parties. When a trial order or judgment is appealed or writted, counsel are almost invariably appointed for the appeal. The only exception comes when we, looking at cases individually, can conclude with assurance that the party has the funds to hire private counsel. This happens very rarely.

The counsel who are appointed are competent. Particularly in terms of appellate work, counsel are experienced and diligent and produce a good work product. Our system of appointment relies upon a quasi-governmental agency, Appellate Defenders, Inc., which is staffed with most qualified and experienced attorneys, well able to handle both criminal and dependency appeals. This agency maintains a panel of private attorneys who accept referrals of indigency appeals, which service is not pro bono but compensated. This cadre of appellate counsel is professional. They rely to a considerable extent upon income from their appointed appellate work for their

living. Note also, that at least in current and recent times this work has been popular. There is competition to get on the list. One does not achieve appointment without having demonstrated competency, reliability and professionalism.

Accordingly, we on the Court of Appeal become acquainted with the work of these lawyers. We see their diligence in the briefs they write seeking reversal of dependency orders. We *know* the lengths to which they will go in advocating the positions of their clients. These are not people presenting an amicus curiae brief.

Therefore, when we receive a *Wende* brief from one of these advocates, we are assured that in fact the record has been sifted, potential issues for review have been analyzed, and the conclusion reached that there are no issues for review is professionally sustainable. Beyond this, we know that before a *Wende* brief is submitted it, as well as the record on which it is based, have been reviewed by an experienced staff person at Appellate Defenders, Inc.[4]

What, then, is to be accomplished by requiring duplicative effort by the Court of Appeal? Our resources for digging issues out of records are no better, indeed probably inferior, to those of regular dependency appellate counsel. As a practical matter we know that in the several years in which we have accepted and given *Wende* reviews to dependency cases we have discovered, to the best of our present recollection, no unbriefed issues warranting further attention. Should a case be developed which actually reflected the complex issues giving rise, in accordance with the *Lassiter* principles, to due process concerns, it is likely that diligent appellate counsel could persuade us to give it that extra review available under *Wende*. However, the ordinary dependency case, as is true with this case, does not present that situation.

The possible merit of continuing *Wende* review of dependency cases must also be viewed in light of the administrative problems now facing our Courts of Appeal. A true *Wende* review in a dependency case requires the inspection of serial social service reports, minute orders of multiple hearings at the trial court, psychological reports, several reporters' transcripts going back sometimes for periods of years, letters from friends, etc. This court now has a backlog of over 700 fully briefed cases waiting resolution. Our present workload will result in civil cases waiting for a period of from 15 to 18

---

[4]In the affidavit attached to the brief in this case counsel averred that before filing the *Wende* brief the case had been reviewed and discussed with a staff attorney at Appellate Defenders, Inc.

months *after* complete briefing before we and our staffs commence (let alone complete) their review. Under these circumstances can we justify the devotion of time and energy for duplicative review of this special class of civil case, when all our experience teaches that such review is unproductive?

The answer is "no." We decline to apply *Wende* principles to dependency cases (short of the very unusual case described in our *Lassiter* discussion above). This appeal is dismissed.

Benke, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 18, 1996.