# SMITH, WARDEN *v.* ROBBINS

No. 98–1037.   Argued October 5, 1999—Decided January 19, 2000

262

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, and KENNEDY, JJ., joined. STEVENS, J., filed a dissenting opinion, in which GINSBURG, J., joined, *post*, p. 289. SOUTER, J., filed a dissenting opinion, in which STEVENS, GINSBURG, and BREYER, JJ., joined, *post*, p. 292.

*Carol Frederick Jorstad,* Deputy Attorney General of California, argued the cause for petitioner. With her on the briefs were *Bill Lockyer,* Attorney General, *David P. Druliner,* Chief Assistant Attorney General, *Carol Wendelin Pollack,* Senior Assistant Attorney General, and *Donald E. De Nicola,* Deputy Attorney General.

*Ronald J. Nessim,* by appointment of the Court, 526 U. S. 1109, argued the cause for respondent. With him on the brief were *Thomas R. Freeman* and *Elizabeth A. Newman.**

JUSTICE THOMAS delivered the opinion of the Court.

Not infrequently, an attorney appointed to represent an indigent defendant on appeal concludes that an appeal would be frivolous and requests that the appellate court allow him to withdraw or that the court dispose of the case without the filing of merits briefs. In *Anders* v. *California,* 386 U. S. 738 (1967), we held that, in order to protect indigent defendants' constitutional right to appellate counsel, courts must safeguard against the risk of granting such requests in cases where the appeal is not actually frivolous. We found inadequate California's procedure—which permitted appellate counsel to withdraw upon filing a conclusory letter stating that the appeal had "no merit" and permitted the appellate court to affirm the conviction upon reaching the same conclusion following a review of the record. We went on to set

---

*Briefs of *amici curiae* urging reversal were filed for the State of Arizona et al. by *Janet Napolitano,* Attorney General of Arizona, *Colleen L. French,* Assistant Attorney General, and *Paul J. McMurde;* and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *M. Jane Brady* of Delaware, *Thurbert E. Baker* of Georgia, *Mike Moore* of Mississippi, *Frankie Sue Del Papa* of Nevada, *D. Michael Fisher* of Pennsylvania, *Paul G. Summers* of Tennessee, *Ken Salazar* of Colorado, *Robert A. Butterworth* of Florida, *Richard P. Ieyoub* of Louisiana, *Don Stenberg* of Nebraska, *Patricia A. Madrid* of New Mexico, *Charles M. Condon* of South Carolina, and *Mark L. Earley* of Virginia; for the California Academy of Appellate Lawyers by *Robert S. Gerstein, Jay-Allen Eisen, Michael M. Berger, Peter W. Davis, Rex S. Heinke, Wendy C. Lascher, Gerald Z. Marer,* and *Jonathan B. Steiner;* and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson.*

Briefs of *amici curiae* urging affirmance were filed for the National Association of Criminal Defense Lawyers by *Leon Friedman;* and for Jesus Garcia Delgado by *Michael B. Dashjian.*

*Gregory R. Smith* filed a brief for retired Justice Armand Arabian et al. as *amici curiae.*

forth an acceptable procedure. California has since adopted a new procedure, which departs in some respects from the one that we delineated in *Anders.* The question is whether that departure is fatal. We hold that it is not. The procedure we sketched in *Anders* is a prophylactic one; the States are free to adopt different procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel.

## I

### A

Under California's new procedure, established in *People* v. *Wende,* 25 Cal. 3d 436, 441–442, 600 P. 2d 1071, 1074–1075 (1979), and followed in numerous cases since then, see, *e. g., People* v. *Rowland,* 75 Cal. App. 4th 61, 63, 88 Cal. Rptr. 2d 900, 901 (1999), counsel, upon concluding that an appeal would be frivolous, files a brief with the appellate court that summarizes the procedural and factual history of the case, with citations of the record. He also attests that he has reviewed the record, explained his evaluation of the case to his client, provided the client with a copy of the brief, and informed the client of his right to file a *pro se* supplemental brief. He further requests that the court independently examine the record for arguable issues. Unlike under the *Anders* procedure, counsel following *Wende* neither explicitly states that his review has led him to conclude that an appeal would be frivolous (although that is considered implicit, see *Wende,* 25 Cal. 3d, at 441–442, 600 P. 2d, at 1075) nor requests leave to withdraw. Instead, he is silent on the merits of the case and expresses his availability to brief any issues on which the court might desire briefing. See generally *id.,* at 438, 441–442, 600 P. 2d, at 1072, 1074–1075.

The appellate court, upon receiving a *"Wende* brief," must "conduct a review of the entire record," regardless of whether the defendant has filed a *pro se* brief. *Id.,* at 441–442, 600 P. 2d, at 1074–1075. The California Supreme Court

in *Wende* required such a thorough review notwithstanding a dissenting Justice's argument that it was unnecessary and exceeded the review that a court performs under *Anders*. See 25 Cal. 3d, at 444–445, 600 P. 2d, at 1077 (Clark, J., concurring in judgment and dissenting in part); see also *id.*, at 444, 600 P. 2d, at 1076 ("The precise holding in *Anders* was that a 'no merit' letter . . . 'was not enough.' . . . Just what is 'enough' is not clear, but the majority of the court in that case did not require an appellate court to function as co-counsel"). If the appellate court, after its review of the record pursuant to *Wende*, also finds the appeal to be frivolous, it may affirm. See *id.*, at 443, 600 P. 2d, at 1076 (majority opinion). If, however, it finds an arguable (*i. e.*, nonfrivolous) issue, it orders briefing on that issue. *Id.*, at 442, n. 3, 600 P. 2d, at 1075, n. 3.[1]

## B

In 1990, a California state-court jury convicted respondent Lee Robbins of second-degree murder (for fatally shooting his former roommate) and of grand theft of an automobile (for stealing a truck that he used to flee the State after committing the murder). Robbins was sentenced to 17 years to life. He elected to represent himself at trial, but on appeal

---

[1] In addition to this double review and double determination of frivolity, California affords a third layer of review, through the California Appellate Projects, described in a recent opinion by the California Court of Appeal for the First District:

"[The appellate projects] are under contract to the court; their contractual duties include review of the records to assist court-appointed counsel in identifying issues to brief. If the court-appointed counsel can find no meritorious issues to raise and decides to file a *Wende* brief, an appellate project staff attorney reviews the record again to determine whether a *Wende* brief is appropriate. Thus, by the time the *Wende* brief is filed in the Court of Appeal, the record in the case has been reviewed *both* by the court-appointed counsel (who is presumably well qualified to handle the case) *and* by an experienced attorney on the staff of [the appellate project]." *People* v. *Hackett*, 36 Cal. App. 4th 1297, 1311, 43 Cal. Rptr. 2d 219, 228 (1995).

he received appointed counsel. His appointed counsel, concluding that an appeal would be frivolous, filed with the California Court of Appeal a brief that complied with the *Wende* procedure.[2]   Robbins also availed himself of his right under *Wende* to file a *pro se* supplemental brief, filing a brief in which he contended that there was insufficient evidence to support his conviction and that the prosecutor violated *Brady* v. *Maryland,* 373 U. S. 83 (1963), by failing to disclose exculpatory evidence.

The California Court of Appeal, agreeing with counsel's assessment of the case, affirmed.   The court explained that it had "examined the entire record" and had, as a result, concluded both that counsel had fully complied with his responsibilities under *Wende* and that "no arguable issues exist."   App. 39.   The court added that the two issues that Robbins raised in his supplemental brief had no support in the record.   *Ibid.*   The California Supreme Court denied Robbins' petition for review.

After exhausting state postconviction remedies, Robbins filed in the United States District Court for the Central District of California the instant petition for a writ of habeas corpus pursuant to 28 U. S. C. § 2254.[3]   Robbins renewed his *Brady* claim, argued that the state trial court had erred by not allowing him to withdraw his waiver of his right to trial counsel, and added nine other claims of trial error.   In addition, and most importantly for present purposes, he claimed that he had been denied effective assistance of appellate counsel because his appellate counsel's *Wende* brief failed to comply with *Anders* v. *California,* 386 U. S., at 744.   *Anders*

---

[2] Before filing his *Wende* brief, counsel consulted with the California Appellate Project for the Second District Court of Appeal and received its permission to file such a brief.   App. 43.

[3] The Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214, which amended § 2254 and related provisions, does not apply to respondent's habeas petition, since he filed his petition before that Act's effective date of April 24, 1996.   See *Lindh* v. *Murphy,* 521 U. S. 320 (1997).

set forth a procedure for an appellate counsel to follow in seeking permission to withdraw from the representation when he concludes that an appeal would be frivolous; that procedure includes the requirement that counsel file a brief "referring to anything in the record that might arguably support the appeal," *ibid.*

The District Court agreed with Robbins' last claim, concluding that there were at least two issues that, pursuant to *Anders,* counsel should have raised in his brief (in a *Wende* brief, as noted above, counsel is not required to raise issues): first, whether the prison law library was adequate for Robbins' needs in preparing his defense after he elected to dismiss his appointed counsel and proceed *pro se* at trial, and, second, whether the trial court erred in refusing to allow him to withdraw his waiver of counsel. The District Court did not attempt to determine the likelihood that either of these two issues would have prevailed in an appeal. Rather, it simply concluded that, in the language of the *Anders* procedure, these issues "might arguably" have "support[ed] the appeal," App. 51, n. 6 (citing *Anders*), and thus that Robbins' appellate counsel, by not including them in his brief, deviated from the procedure set forth in *Anders.* The court concluded that such a deviation amounted to deficient performance by counsel. In addition, rather than requiring Robbins to show that he suffered prejudice from this deficient performance, the District Court applied a presumption of prejudice. App. 49. Thus, based simply on a finding that appellate counsel's brief was inadequate under *Anders,* the District Court ordered California to grant respondent a new appeal within 30 days or else release him from custody.

The United States Court of Appeals for the Ninth Circuit agreed with the District Court on the *Anders* issue. In the Ninth Circuit's view, *Anders,* together with *Douglas* v. *California,* 372 U. S. 353 (1963), which held that States must provide appointed counsel to indigent criminal defendants on appeal, "set forth the exclusive procedure through which ap-

pointed counsel's performance can pass constitutional muster." 152 F. 3d 1062, 1066 (1998). Rejecting petitioner's argument that counsel's brief was sufficient because it complied with *Wende,* the Ninth Circuit concluded that the brief was deficient because it did not, as the *Anders* procedure requires, identify any legal issues that arguably could have supported the appeal. 152 F. 3d, at 1066–1067.[4] The court did not decide whether a counsel's deviation from *Anders,* standing alone, would warrant a new appeal, see 152 F. 3d, at 1066–1067, but rather concluded that the District Court's award of relief was proper because counsel had failed to brief the two arguable issues that the District Court identified. The Ninth Circuit remanded, however, for the District Court to consider respondent's 11 claims of trial error. *Id.,* at 1069. The court reasoned that if Robbins prevailed on any of these claims, it would be unnecessary to order the California Court of Appeal to grant a new direct appeal. We granted certiorari. 526 U. S. 1003 (1999).

## II

### A

In *Anders,* we reviewed an earlier California procedure for handling appeals by convicted indigents. Pursuant to that procedure, Anders' appointed appellate counsel had filed a letter stating that he had concluded that there was "no merit to the appeal," 386 U. S., at 739–740. Anders, in response, sought new counsel; the State Court of Appeal denied the request, and Anders filed a *pro se* appellate brief. That court then issued an opinion that reviewed the four claims in his *pro se* brief and affirmed, finding no error (or no prejudicial error). *People* v. *Anders,* 167 Cal. App. 2d 65, 333 P. 2d

---

[4] In subsequent cases, the Ninth Circuit has reiterated its view that the *Wende* procedure is unconstitutional because it differs from the *Anders* procedure. See *Delgado* v. *Lewis,* 181 F. 3d 1087, 1090, 1093, stay granted pending disposition of pet. for cert., 527 U. S. 1066 (1999); *Davis* v. *Kramer,* 167 F. 3d 494, 496, 497–498 (1999), cert. pending, No. 98–1427.

854 (1959). Anders thereafter sought a writ of habeas corpus from the State Court of Appeal, which denied relief, explaining that it had again reviewed the record and had found the appeal to be "'without merit.'" *Anders*, 386 U. S., at 740 (quoting unreported memorandum opinion).

We held that "California's action does not comport with fair procedure and lacks that equality that is required by the Fourteenth Amendment." *Id.*, at 741. We placed the case within a line of precedent beginning with *Griffin* v. *Illinois*, 351 U. S. 12 (1956), and continuing with *Douglas, supra,* that imposed constitutional constraints on States when they choose to create appellate review.[5] In finding the California procedure to have breached these constraints, we compared it to other procedures we had found invalid and to statutory requirements in the federal courts governing appeals by indigents with appointed counsel. *Anders, supra,* at 741–743. We relied in particular on *Ellis* v. *United States*, 356 U. S. 674 (1958) *(per curiam)*, a case involving federal statutory requirements, and quoted the following passage from it:

> "'If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied.'" *Anders, supra,* at 741–742 (quoting *Ellis, supra,* at 675).

In *Anders*, neither counsel, the state appellate court on direct appeal, nor the state habeas courts had made any finding of frivolity.[6] We concluded that a finding that the appeal

---

[5] The Constitution does not, however, require States to create appellate review in the first place. See, *e. g., Ross* v. *Moffitt*, 417 U. S. 600, 606 (1974) (citing *McKane* v. *Durston*, 153 U. S. 684, 687 (1894)).

[6] The same was true in *Ellis* itself. See *Ellis* v. *United States*, 249 F. 2d 478, 480–481 (CADC 1957) (Washington, J., dissenting) ("Counsel . . . concluded that the rulings of the District Court were not 'so clearly erro-

had "no merit" was not adequate, because it did not mean that the appeal was so lacking in prospects as to be "frivolous": "We cannot say that there was a finding of frivolity by either of the California courts or that counsel acted in any greater capacity than merely as *amicus curiae* which was condemned in *Ellis.*" 386 U. S., at 743.

Having rejected the California procedure, we proceeded, in a final, separate section, to set out what would be an acceptable procedure for treating frivolous appeals:

> "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Id.,* at 744.

We then concluded by explaining how this procedure would be better than the California one that we had found deficient. Among other things, we thought that it would "induce the court to pursue all the more vigorously its own review because of the ready references not only to the record but also

neous as to constitute probable error.' . . . Where, as here, there was a fairly arguable question, counsel should have proceeded to present argument"), vacated and remanded, 356 U. S. 674 (1958) *(per curiam).*

to the legal authorities as furnished it by counsel." *Id.*, at 745.

B

The Ninth Circuit ruled that this final section of *Anders*, even though unnecessary to our holding in that case, was obligatory upon the States. We disagree. We have never so held; we read our precedents to suggest otherwise; and the Ninth Circuit's view runs contrary to our established practice of permitting the States, within the broad bounds of the Constitution, to experiment with solutions to difficult questions of policy.

In *McCoy* v. *Court of Appeals of Wis., Dist. 1*, 486 U. S. 429 (1988), we rejected a challenge to Wisconsin's variation on the *Anders* procedure. Wisconsin had departed from *Anders* by requiring *Anders* briefs to discuss *why* each issue raised lacked merit. The defendant argued that this rule was contrary to *Anders* and forced counsel to violate his ethical obligations to his client. We, however, emphasized that the right to appellate representation does not include a right to present frivolous arguments to the court, 486 U. S., at 436, and, similarly, that an attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal," *ibid.* (footnote omitted). *Anders*, we explained, merely aims to "assure the court that the indigent defendant's constitutional rights have not been violated." 486 U. S., at 442. Because the Wisconsin procedure adequately provided such assurance, we found no constitutional violation, notwithstanding its variance from *Anders*. See 486 U. S., at 442–444. We did, in *McCoy*, describe the procedure at issue as going "one step further" than *Anders*, *McCoy*, *supra*, at 442, thus suggesting that *Anders* might set a mandatory minimum, but we think this description of the Wisconsin procedure questionable, since it provided less effective advocacy for an indigent—in at least one respect—than does the *Anders* procedure. The Wisconsin procedure, by providing for one-sided briefing by counsel against his own client's best claims, probably made a court

more likely to rule against the indigent than if the court had simply received an *Anders* brief.

In *Pennsylvania* v. *Finley*, 481 U. S. 551 (1987), we explained that the *Anders* procedure is not "an independent constitutional command," but rather is just "a prophylactic framework" that we established to vindicate the constitutional right to appellate counsel announced in *Douglas*. 481 U. S., at 555. We did not say that our *Anders* procedure was the *only* prophylactic framework that could adequately vindicate this right; instead, by making clear that the Constitution itself does not compel the *Anders* procedure, we suggested otherwise. Similarly, in *Penson* v. *Ohio*, 488 U. S. 75 (1988), we described *Anders* as simply erecting "safeguards." 488 U. S., at 80.

It is true that in *Penson* we used some language suggesting that *Anders* is mandatory upon the States, see 488 U. S., at 80–82, but that language was not necessary to the decision we reached. We had no reason in *Penson* to determine whether the *Anders* procedure was mandatory, because the procedure at issue clearly failed under *Douglas*, see *infra*, at 280. Further, counsel's action in *Penson* was closely analogous to the action of counsel that we found invalid in *Anders*, see *Penson, supra*, at 77–78, so there was no need to rely on the *Anders* procedure, as opposed to just the *Anders* holding, to find counsel's action improper. See 488 U. S., at 77 ("The question presented by this case is remarkably similar [to the one presented in *Anders*] and therefore requires a similar answer").

Finally, any view of the procedure we described in the last section of *Anders* that converted it from a suggestion into a straitjacket would contravene our established practice, rooted in federalism, of allowing the States wide discretion, subject to the minimum requirements of the Fourteenth Amendment, to experiment with solutions to difficult problems of policy. In *Griffin* v. *Illinois*, 351 U. S. 12 (1956), which we invoked as the foundational case for our holding

in *Anders*, see *Anders*, 386 U. S., at 741, we expressly disclaimed any pretensions to rulemaking authority for the States in the area of indigent criminal appeals. We imposed no broad rule or procedure but merely held unconstitutional Illinois' requirement that indigents pay a fee to receive a trial transcript that was essential for bringing an appeal. Justice Frankfurter, who provided the necessary fifth vote for the holding in *Griffin*, emphasized that it was not for this Court "to tell Illinois what means are open to the indigent and must be chosen. Illinois may prescribe any means that are within the wide area of its constitutional discretion" and "may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent." 351 U. S., at 24 (opinion concurring in judgment). He added that while a State could not "bolt the door to equal justice," it also was not obliged to "support a wasteful abuse of the appellate process." *Ibid.* The *Griffin* plurality shared this view, explaining that the Court was not holding "that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court [of Illinois] may find other means of affording adequate and effective appellate review to indigent defendants." *Id.*, at 20.

In a related context, we stated this basic principle of federalism in the very Term in which we decided *Anders*. We emphatically reaffirmed that the Constitution "has never been thought [to] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure." *Spencer* v. *Texas*, 385 U. S. 554, 564 (1967) (citing, *inter alia*, *Griffin*, *supra*). Accord, *Medina* v. *California*, 505 U. S. 437, 443–444, 447–448 (1992). Justice Stewart, concurring in *Spencer*, explained further:

> "If the Constitution gave me a roving commission to impose upon the criminal courts of Texas my own notions of enlightened policy, I would not join the Court's opinion. . . . [But] [t]he question is whether those procedures fall below the minimum level the Fourteenth

Amendment will tolerate. Upon that question, I am constrained to join the opinion and judgment of the Court." 385 U. S., at 569.

We have continued to reiterate this principle in recent years. See *Finley*, 481 U. S., at 559 (refusing to accept the premise that "when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact form such assistance must assume"); *ibid.* (explaining that States have "substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review"); *Murray* v. *Giarratano*, 492 U. S. 1, 13 (1989) (O'CONNOR, J., concurring) ("[N]or does it seem to me that the Constitution requires the States to follow any particular federal model in [postconviction] proceedings. . . . States [have] considerable discretion"); *id.*, at 14 (KENNEDY, J., concurring in judgment) ("[J]udicial imposition of a categorical remedy . . . might pretermit other responsible solutions being considered in Congress and state legislatures"). Although *Finley* and *Murray* involved postconviction proceedings (in which there is no constitutional right to counsel) rather than direct appeal, we think, as the language of *Griffin* suggests, that the principle is the same in both contexts. For in *Griffin*, as here, there was an underlying constitutional right at issue.

In short, it is more in keeping with our status as a court, and particularly with our status as a court in a federal system, to avoid imposing a single solution on the States from the top down. We should, and do, evaluate state procedures one at a time, as they come before us, see *Murray, supra,* at 14, while leaving "the more challenging task of crafting appropriate procedures . . . to the laboratory of the States in the first instance," *Cruzan* v. *Director, Mo. Dept. of Health,* 497 U. S. 261, 292 (1990) (O'CONNOR, J., concurring) (citation and internal quotation marks omitted). We will not cavalierly "imped[e] the States' ability to serve as laboratories for testing solutions to novel legal problems." *Arizona* v.

*Evans*, 514 U. S. 1, 24 (1995) (GINSBURG, J., dissenting). Accordingly, we hold that the *Anders* procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals. States may—and, we are confident, will—craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders*. The Constitution erects no barrier to their doing so.[7]

## III

Having determined that California's *Wende* procedure is not unconstitutional merely because it diverges from the *Anders* procedure, we turn to consider the *Wende* procedure on its own merits. We think it clear that California's system does not violate the Fourteenth Amendment, for it provides "a criminal appellant pursuing a first appeal as of right [the] · minimum safeguards necessary to make that appeal 'adequate and effective,'" *Evitts* v. *Lucey*, 469 U. S. 387, 392 (1985) (quoting *Griffin*, 351 U. S., at 20 (plurality opinion)).

## A

As we have admitted on numerous occasions, "'[t]he precise rationale for the *Griffin* and *Douglas* lines of cases has never been explicitly stated, some support being derived from the Equal Protection Clause of the Fourteenth Amendment and some from the Due Process Clause of that Amendment.'" *Evitts, supra*, at 403 (quoting *Ross* v. *Moffitt*, 417 U. S. 600, 608–609 (1974) (footnote omitted)). But our case law reveals that, as a practical matter, the two Clauses largely converge to require that a State's procedure "affor[d] adequate and effective appellate review to indigent defendants," *Griffin*, 351 U. S., at 20 (plurality opinion). A State's procedure provides such review so long as it reasonably en-

---

[7] States have, in fact, already been doing this to some degree. See Warner, *Anders* in the Fifty States: Some Appellants' Equal Protection is More Equal Than Others', 23 Fla. St. U. L. Rev. 625, 642–662 (1996); *Arizona* v. *Clark*, 196 Ariz. 530, 536–539, 2 P. 3d 89, 95–98 (App. 1999).

sures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal.[8]  See *id.*, at 17–18 (plurality opinion) (state law regulating indigents' appeals bore "no rational relationship to a defendant's guilt or innocence"); *id.*, at 22 (Frankfurter, J., concurring in judgment) (law imposed "differentiations . . . that have no relation to a rational policy of criminal appeal"); *Douglas*, 372 U. S., at 357 (decision of first appeal "without benefit of counsel, . . . no matter how meritorious [an indigent's] case may turn out to be," discriminates between rich and poor rather than between "possibly good and obviously bad cases" (internal quotation marks omitted)); *Rinaldi* v. *Yeager*, 384 U. S. 305, 310 (1966) (state appellate system must be "free of unreasoned distinctions"); *Evitts, supra,* at 404 (law in *Griffin* "decided the appeal in a way that was arbitrary with respect to the issues involved").   Compare *Finley, supra,* at 556 ("The equal protection guarantee . . . only . . . assure[s] the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process" (quoting *Ross, supra,* at 616)), with *Evitts, supra,* at 405 ("[D]ue process . . . [requires] States . . . to offer each defendant a fair opportunity to obtain an adjudication on the merits of his appeal" (discussing *Griffin* and *Douglas*)).[9]

In determining whether a particular state procedure satisfies this standard, it is important to focus on the underlying goals that the procedure should serve—to ensure that those indigents whose appeals are not frivolous receive the counsel and merits brief required by *Douglas*, and also to enable the

---

[8] Of course, no procedure can eliminate all risk of error.  *E. g., Walters* v. *National Assn. of Radiation Survivors,* 473 U. S. 305, 320–321 (1985).

[9] Although we have said that an indigent must receive "substantial equality" compared to the legal assistance that a defendant with paid counsel would receive, *McCoy* v. *Court of Appeals of Wis., Dist. 1,* 486 U. S. 429, 438 (1988), we have also emphasized that "[a]bsolute equality is not required; lines can be and are drawn and we often sustain them," *Douglas* v. *California,* 372 U. S. 353, 357 (1963).

State to "protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent," *Griffin, supra,* at 24 (Frankfurter, J., concurring in judgment). For although, under *Douglas,* indigents generally have a right to counsel on a first appeal as of right, it is equally true that this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal.[10] See *McCoy,* 486 U. S., at 436–438; *Douglas, supra,* at 357; see also *United States* v. *Cronic,* 466 U. S. 648, 656, n. 19 (1984) ("Of course, the Sixth Amendment does not require that [trial] counsel do what is impossible or unethical"); cf. *Nix* v. *Whiteside,* 475 U. S. 157, 175 (1986) (no violation of Sixth Amendment right to the effective assistance of counsel when trial counsel refuses to violate ethical duty not to assist his client in presenting perjured testimony). To put the point differently, an indigent defendant who has his appeal dismissed because it is frivolous has not been deprived of "a fair opportunity" to bring his appeal, *Evitts, supra,* at 405; see *Finley,* 481 U. S., at 556, for fairness does not require either counsel or a full appeal once it is properly determined that an appeal is frivolous. The obvious goal of *Anders* was to prevent this limitation on the right to appellate counsel from swallowing the right itself, see *Penson,* 488 U. S., at 83–84; *McCoy, supra,* at 444, and we do not retreat from that goal today.

## B

We think the *Wende* procedure reasonably ensures that an indigent's appeal will be resolved in a way that is related to

---

[10] This distinction gives meaning to our previous emphasis on an indigent appellant's right to "advocacy." Although an indigent whose appeal is frivolous has no right to have an advocate make his case to the appellate court, such an indigent does, in all cases, have the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern nonfrivolous arguments. See *Ellis,* 356 U. S., at 675; *Anders* v. *California,* 386 U. S. 738, 741–743 (1967).

the merit of that appeal. Whatever its strengths or weaknesses as a matter of policy, we cannot say that it fails to afford indigents the adequate and effective appellate review that the Fourteenth Amendment requires. A comparison of the *Wende* procedure to the procedures evaluated in our chief cases in this area makes this evident.

The *Wende* procedure is undoubtedly far better than those procedures we have found inadequate. *Anders* itself, in disapproving the former California procedure, chiefly relied on three precedents: *Ellis* v. *United States,* 356 U. S. 674 (1958) *(per curiam), Eskridge* v. *Washington Bd. of Prison Terms and Paroles,* 357 U. S. 214 (1958) *(per curiam),* and *Lane* v. *Brown,* 372 U. S. 477 (1963). See *Anders,* 386 U. S., at 741–743. Although we did not, in *Anders,* explain in detail why the California procedure was inadequate under each of these precedents, our particularly heavy reliance on *Ellis* makes clear that a significant factor was that the old California procedure did not require either counsel or the court to determine that the appeal was frivolous; instead, the procedure required only that they determine that the defendant was unlikely to prevail on appeal. Compare *Anders, supra,* at 741–742 ("'If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw . . . . If the court . . . agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied'" (quoting *Ellis, supra,* at 675)), with *Anders, supra,* at 743 ("We cannot say that there was a finding of frivolity"). See also *McCoy, supra,* at 437 (quoting same passage from *Ellis* that we quoted in *Anders*). This problem also appears to have been one of the flaws in the procedures at issue in *Eskridge* and *Lane.* The former involved a finding only that there had been "'no grave or prejudicial errors'" at trial, *Anders, supra,* at 742 (quoting *Eskridge, supra,* at 215), and the latter, a finding only that the appeal "'would be unsuccessful,'" *Anders, supra,* at 743 (quoting *Lane, supra,* at 482). *Wende,*

by contrast, requires both counsel and the court to find the appeal to be lacking in arguable issues, which is to say, frivolous. See 25 Cal. 3d, at 439, 441–442, 600 P. 2d, at 1073, 1075; see *id.*, at 441, 600 P. 2d, at 1074 (reading *Anders* as finding old California procedure deficient largely "because the court itself did not make an express finding that the appeal was frivolous").

An additional problem with the old California procedure was that it apparently permitted an appellate court to allow counsel to withdraw and thereafter to decide the appeal without appointing new counsel. See *Anders, supra,* at 740, n. 2. We resolved any doubt on this point in *Penson,* where we struck down a procedure that allowed counsel to withdraw before the court had determined whether counsel's evaluation of the case was accurate, 488 U. S., at 82–83, and, in addition, allowed a court to decide the appeal without counsel even if the court found arguable issues, *id.,* at 83 (stating that this latter flaw was the "[m]ost significan[t]" one). Thus, the *Penson* procedure permitted a basic violation of the *Douglas* right to have counsel until a case is determined to be frivolous and to receive a merits brief for a nonfrivolous appeal. See 488 U. S., at 88 ("[I]t is important to emphasize that the denial of counsel in this case left petitioner completely without representation during the appellate court's actual decisional process"); *ibid.* (defendant was "entirely without the assistance of counsel on appeal"). Cf. *McCoy, supra,* at 430–431, n. 1 (approving procedure under which appellate court first finds appeal to be frivolous and affirms, then relieves counsel). Under *Wende,* by contrast, *Douglas* violations do not occur, both because counsel does not move to withdraw and because the court orders briefing if it finds arguable issues. See *Wende, supra,* at 442, n. 3, 600 P. 2d, at 1075, n. 3; see also, *e. g., Rowland,* 75 Cal. App. 3d, at 61–62, 88 Cal. Rptr. 2d, at 900–901.

In *Anders,* we also disapproved the old California procedure because we thought that a one-paragraph letter from

counsel stating only his "bare conclusion" that the appeal had no merit was insufficient. 386 U.S., at 742. It is unclear from our opinion in *Anders* how much our objection on this point was severable from our objection to the lack of a finding of frivolity, because we immediately followed our description of counsel's "no merit" letter with a discussion of *Ellis, Eskridge,* and *Lane,* and the lack of such a finding. See 386 U.S., at 742–743. In any event, the *Wende* brief provides more than a one-paragraph "bare conclusion." Counsel's summary of the case's procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.

Finally, an additional flaw with the procedures in *Eskridge* and *Lane* was that there was only one tier of review—by the trial judge in *Eskridge* (who understandably had little incentive to find any error warranting an appeal) and by the public defender in *Lane.* See *Anders, supra,* at 742–743. The procedure in *Douglas* itself was, in part, flawed for the same reason. See 372 U.S., at 354–355. The *Wende* procedure, of course, does not suffer from this flaw, for it provides at least two tiers of review.

Not only does the *Wende* procedure far exceed those procedures that we have found invalid, but it is also at least comparable to those procedures that we have approved. Turning first to the procedure we set out in the final section of *Anders,* we note that it has, from the beginning, faced "'consistent and severe criticism.'" *In re Sade C.,* 13 Cal. 4th 952, 979, n. 7, 920 P. 2d 716, 731, n. 7 (1996) (quoting Note, 67 Texas L. Rev. 181, 212 (1988)). One of the most consistent criticisms, one with which we wrestled in *McCoy,* is that *Anders* is in some tension both with counsel's ethical duty as an officer of the court (which requires him not to present frivolous arguments) and also with his duty to further his client's interests (which might not permit counsel to characterize his

client's claims as frivolous).[11]   California, through the *Wende* procedure, has made a good-faith effort to mitigate this problem by not requiring the *Wende* brief to raise legal issues and by not requiring counsel to explicitly describe the case as frivolous.   See *Wende,* 25 Cal. 3d, at 441–442, 600 P. 2d, at 1074–1075.

Another criticism of the *Anders* procedure has been that it is incoherent and thus impossible to follow.   Those making this criticism point to our language in *Anders* suggesting that an appeal could be both "wholly frivolous" and at the same time contain arguable issues, even though we also said that an issue that was arguable was "therefore not frivolous."   *Anders, supra,* at 744.[12]   In other words, the *Anders* procedure appears to adopt gradations of frivolity and to use two different meanings for the phrase "arguable issue." The *Wende* procedure attempts to resolve this problem as well, by drawing the line at frivolity and by defining arguable issues as those that are not frivolous.[13]

---

[11] As one former public defender has explained, "an attorney confronted with the *Anders* situation has to do something that the Code of Professional Responsibility describes as unethical; the only choice is as to which canon he or she prefers to violate."   Pengilly, Never Cry *Anders:* The Ethical Dilemma of Counsel Appointed to Pursue a Frivolous Criminal Appeal, 9 Crim. Justice J. 45, 64 (1986).   See also, *e. g., Commonwealth* v. *Moffett,* 383 Mass. 201, 206, 418 N. E. 2d 585, 590 (1981) (*Anders* requires a "Janus-faced approach" by counsel); Hermann, Frivolous Criminal Appeals, 47 N. Y. U. L. Rev. 701, 711 (1972).

[12] Justice Stewart, in his dissent in *Anders,* was the first to make this criticism of the procedure set out by the *Anders* majority: "[I]f the record did present any such 'arguable' issues, the appeal would not be frivolous." 386 U. S., at 746; see *id.,* at 746, n.   See also, *e. g.,* C. Wolfram, Modern Legal Ethics 817 (1986) ("The *Anders* directives are confusing, if not contradictory").

[13] See *supra,* at 279–280.   A further criticism of *Anders* has been that it is unjust.   More particularly, critics have claimed that, in setting out the *Anders* procedure, we were oblivious to the problem of scarce resources (with regard to both counsel and courts) and, as a result, crafted a rule that diverts attention from meritorious appeals of indigents and ensures poor representation for all indigents.   See, *e. g.,* Pritchard, Auc-

Finally, the *Wende* procedure appears to be, in some ways, better than the one we approved in *McCoy* and, in other ways, worse. On balance, we cannot say that the latter, assuming, *arguendo*, that they outweigh the former, do so sufficiently to make the *Wende* procedure unconstitutional. The Wisconsin procedure we evaluated in *McCoy*, which required counsel filing an *Anders* brief to explain why the issues he raised in his brief lacked merit, arguably exacerbated the ethical problem already present in the *Anders* procedure. The *Wende* procedure, as we have explained, attempts to mitigate that problem. Further, it appears that in the *McCoy* scheme counsel discussed—and the appellate court reviewed—only the parts of the record cited by counsel in support of the "arguable" issues he raised. See 486 U. S., at 440, 442. The *Wende* procedure, by contrast, requires a more thorough treatment of the record by both counsel and court. See 25 Cal. 3d, at 440–441, 600 P. 2d, at 1074–1075; *id.*, at 445, 600 P. 2d, at 1077 (Clark, J., concurring in judg-

tioning Justice: Legal and Market Mechanisms for Allocating Criminal Appellate Counsel, 34 Am. Crim. L. Rev. 1161, 1167–1168 (1997) (*Anders* has created a "tragedy of the commons" that, "far from guaranteeing adequate appellate representation for all criminal defendants, instead ensures that indigent criminal defendants will receive mediocre appellate representation, whether their claims are good or bad" (footnote omitted)); Pritchard, *supra*, at 1169 (noting *Anders'* similar effect on appellate courts); Pritchard, *supra*, at 1162 ("[J]udicial fiat cannot cure scarcity; it merely disguises the symptoms of the disease"); Doherty, Wolf! Wolf!—The Ramifications of Frivolous Appeals, 59 J. Crim. L., C. & P. S. 1, 2 (1968) ("[T]he people who will suffer the most are the indigent prisoners who have been *unjustly* convicted; they will languish in prison while lawyers devote time and energy to hopeless causes on a first come-first served basis" (footnote omitted)). We cannot say whether the *Wende* procedure is better or worse than the *Anders* procedure in this regard (although we are aware of policy-based arguments that it is worse as to appellate courts, see *People* v. *Williams*, 59 Cal. App. 4th 1202, 1205–1206, 69 Cal. Rptr. 2d 690, 692 (1997); Brief for Retired Justice Armand Arabian et al. as *Amici Curiae*), but it is clear that, to the extent this criticism has merit, our holding today that the *Anders* procedure is not exclusive will enable States to continue to experiment with solutions to this problem.

ment and dissenting in part). On the other hand, the *McCoy* procedure, unlike the *Wende* procedure, does assist the reviewing court by directing it to particular legal issues; as to those issues, this is presumably a good thing. But it is also possible that bad judgment by the attorney in selecting the issues to raise might divert the court's attention from more meritorious, unmentioned, issues. This criticism is, of course, equally applicable to the *Anders* procedure. Moreover, as to the issues that counsel does raise in a *McCoy* brief, the one-sided briefing on why those issues are frivolous may predispose the court to reach the same conclusion. The *Wende* procedure reduces these risks, by omitting from the brief signals that may subtly undermine the independence and thoroughness of the second review of an indigent's case.

Our purpose is not to resolve any of these arguments. The Constitution does not resolve them, nor does it require us to do so. "We address not what is prudent or appropriate, but only what is constitutionally compelled." *Cronic,* 466 U. S., at 665, n. 38. It is enough to say that the *Wende* procedure, like the *Anders* and *McCoy* procedures, and unlike the ones in *Ellis, Eskridge, Lane, Douglas,* and *Penson,* affords adequate and effective appellate review for criminal indigents. Thus, there was no constitutional violation in this case simply because the *Wende* procedure was used.

## IV

Since Robbins' counsel complied with a valid procedure for determining when an indigent's direct appeal is frivolous, we reverse the Ninth Circuit's judgment that the *Wende* procedure fails adequately to serve the constitutional principles we identified in *Anders.* But our reversal does not necessarily mean that Robbins' claim that his appellate counsel rendered constitutionally ineffective assistance fails. For it may be, as Robbins argues, that his appeal was not frivolous and that he was thus entitled to a merits brief rather than to a *Wende* brief. Indeed, both the District Court and the

Ninth Circuit found that there were two arguable issues on direct appeal. The meaning of "arguable issue" as used in the opinions below, however, is far from clear. The courts below most likely used the phrase in the unusual way that we used it in *Anders*—an issue arguably supporting the appeal even though the appeal was wholly frivolous. See 152 F. 3d, at 1067 (discussing arguable issues in context of requirements of *Anders*); App. 48 (District Court opinion) (same). Such an issue does not warrant a merits brief. But the courts below may have used the term to signify issues that were "arguable" in the more normal sense of being nonfrivolous and thus warranting a merits brief. See *id.*, at 49, and n. 3 (District Court, considering arguable issues to determine "whether *Anders* was violated," but also defining arguable issue as one that counsel could argue "in good faith with some potential for prevailing"). Further, the courts below, in determining whether there were arguable issues, did not address petitioner's argument that, at least with regard to the adequacy of the prison law library, Robbins waived the issue for appeal by failing to object at trial. Thus, it will be necessary on remand to clarify just how strong these two issues are.

On remand, the proper standard for evaluating Robbins' claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in *Strickland* v. *Washington*, 466 U. S. 668 (1984). See *Smith* v. *Murray*, 477 U. S. 527, 535–536 (1986) (applying *Strickland* to claim of attorney error on appeal). Respondent must first show that his counsel was objectively unreasonable, see *Strickland*, 466 U. S., at 687–691, in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If Robbins succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

See *id.*, at 694 (defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").[14]

The applicability of *Strickland's* actual-prejudice prong to Robbins' claim of ineffective assistance follows from *Penson*, where we distinguished denial of counsel altogether on appeal, which warrants a presumption of prejudice, from mere ineffective assistance of counsel on appeal, which does not. See 488 U. S., at 88–89. The defendant in *Penson* faced a denial of counsel because, as we have discussed, *supra*, at 280, not only was an invalid state procedure followed, but that procedure was clearly invalid insofar as it denied the defendant his right to appellate counsel under *Douglas*, see 488 U. S., at 83, 88. Our holding in *Penson* was consistent with *Strickland* itself, where we said that we would presume prejudice when a defendant had suffered an "[a]ctual or constructive denial of the assistance of counsel altogether." 466 U. S., at 692; see also *Cronic, supra*, at 659, and n. 25. In other words, while we normally apply a "strong presumption of reliability" to judicial proceedings and require a defendant to overcome that presumption, *Strickland, supra*, at 696, when, as in *Penson*, there has been a complete denial of counsel, we understandably presume the opposite, see *Strickland, supra*, at 692.

But where, as here, the defendant has received appellate counsel who has complied with a valid state procedure for determining whether the defendant's appeal is frivolous, and the State has not at any time left the defendant without counsel on appeal, there is no reason to presume that the defendant has been prejudiced. In *Penson*, we worried that requiring the defendant to establish prejudice would leave him "without any of the protections afforded by *Anders*."

---

[14] The performance component need not be addressed first. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland* v. *Washington*, 466 U. S., at 697.

488 U. S., at 86. Here, by contrast, counsel followed a procedure that is constitutional under *Anders* and our other precedents in this area, and Robbins therefore received all the procedural protection that the Constitution requires. We thus presume that the result of the proceedings on appeal is reliable, and we require Robbins to prove the presumption incorrect in his particular case. See *Strickland*, 466 U. S., at 694.

Further, the ineffective-assistance claim that Robbins presses does not fall within any of the three categories of cases, described in *Strickland*, in which we presume prejudice rather than require a defendant to demonstrate it. First, as noted, we presume prejudice in a case of denial of counsel. Second, "various kinds of state interference with counsel's assistance" can warrant a presumption of prejudice. *Id.*, at 692; see *Cronic*, 466 U. S., at 659, and n. 25. Third, "prejudice is presumed when counsel is burdened by an actual conflict of interest," *Strickland*, 466 U. S., at 692, although in such a case we do require the defendant to show that the conflict adversely affected his counsel's performance, *ibid.* None of these three categories applies to a case such as Robbins'. Nor does the policy reason that we offered in *Strickland* for the first two categories apply here, for it is not the case that, if an attorney unreasonably chooses to follow a procedure such as *Anders* or *Wende* instead of filing a merits brief, prejudice "is so likely that case-by-case inquiry into prejudice is not worth the cost." 466 U. S., at 692; see *Cronic, supra*, at 658.[15] On the contrary, in most cases in which a defendant's appeal has been found, pursuant to a valid state procedure, to be frivolous, it will in fact be frivolous.

It is no harder for a court to apply *Strickland* in this area than it is when a defendant claims that he received ineffec-

---

[15] Moreover, such an error by counsel is neither "easy to identify" (since it is necessary to evaluate a defendant's case in order to find the error) nor attributable to the prosecution. See *Strickland, supra*, at 692.

tive assistance of appellate counsel because his counsel, although filing a merits brief, failed to raise a particular claim. It will likely be easier to do so. In *Jones* v. *Barnes*, 463 U. S. 745 (1983), we held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. See, *e. g.*, *Gray* v. *Greer*, 800 F. 2d 644, 646 (CA7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome"). With a claim that counsel erroneously failed to file a merits brief, it will be easier for a defendant-appellant to satisfy the first part of the *Strickland* test, for it is only necessary for him to show that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief, rather than showing that a particular nonfrivolous issue was clearly stronger than issues that counsel did present. In both cases, however, the prejudice analysis will be the same.[16]

---

[16] Federal judges are, of course, fully capable of assessing prejudice in this area, including for the very sorts of claims that Robbins has raised. See, *e. g.*, *Duhamel* v. *Collins*, 955 F. 2d 962, 967 (CA5 1992) (defendant not prejudiced by appellate counsel's failure to challenge sufficiency of the evidence); *Banks* v. *Reynolds*, 54 F. 3d 1508, 1515–1516 (CA10 1995) (finding both parts of *Strickland* test satisfied where appellate counsel failed to raise claim of violation of *Brady* v. *Maryland*, 373 U. S. 83 (1963)); *Cross* v. *United States*, 893 F. 2d 1287, 1290–1291, 1292 (CA11) (rejecting challenge to appellate counsel's failure to raise claim of violation of *Faretta* v. *California*, 422 U. S. 806 (1975), by determining that there was no prejudice), cert. denied, 498 U. S. 849 (1990). Since Robbins was convicted in state court, we have no occasion to consider whether a *per se* prejudice approach, in lieu of *Strickland*'s actual-prejudice requirement, might be appropriate in the context of challenges to federal convictions where counsel was deficient in failing to file a merits brief on direct appeal. See *Goeke* v. *Branch*, 514 U. S. 115, 119 (1995) *(per curiam)* (distinguishing

In sum, Robbins must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins, dissenting.

While I join JUSTICE SOUTER's cogent dissent without qualification, I write separately to emphasize two points that are obscured by the Court's somewhat meandering explanation of its sharp departure from settled law.

First, despite its failure to say so directly, the Court has effectively overruled both *Anders* v. *California*, 386 U. S. 738 (1967), and *Penson* v. *Ohio*, 488 U. S. 75 (1988). Second, its unexplained rejection of the reasoning underlying our decision in *McCoy* v. *Court of Appeals of Wis., Dist. 1*, 486 U. S. 429 (1988), see *ante*, at 272–273, illustrates the extent of today's majority's disregard for accepted precedent.

To make my first point it is only necessary to quote the Court's new standard for determining whether a State's appellate procedure affords adequate review for indigent defendants:

> "A State's procedure provides such review so long as it reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." *Ante*, at 276–277.

The California procedure reviewed in *Anders* and the Ohio procedure reviewed in *Penson*—both found inadequate by this Court—would easily have satisfied that standard. Yet the Court today accepts California's current procedure be-

---

rules established pursuant to this Court's supervisory power to administer federal court system from constitutional rules applicable to States); *United States* v. *Cronic*, 466 U. S. 648, 665, n. 38 (1984) (same).

cause it "requires both counsel and the court to find the appeal to be lacking in arguable issues." *Ante*, at 280. But in defense of its position in *Anders*, California relied heavily on those very same requirements, *i. e.*, "the additional feature of the [State's] system where the court also reads the full record." Brief for Respondent in *Anders* v. *California*, O. T. 1966, No. 98, pp. 30–31; see also *id.*, at 12–13, 19, 23, 28–29. Our *Anders* decision held, however, that this "additional feature" was insufficient to safeguard the indigent appellant's rights.

To make my second point I shall draw on my own experience as a practicing lawyer and as a judge. On a good many occasions I have found that the task of writing out the reasons that support an initial opinion on a question of law—whether for the purpose of giving advice to my client or for the purpose of explaining my vote as an appellate judge—leads to a conclusion that was not previously apparent. Colleagues who shared that view of the importance of giving reasons, as opposed to merely announcing conclusions, joined the opinions that I authored in *McCoy, Penson*, and *Nickols* v. *Gagnon*, 454 F. 2d 467 (CA7 1971).[1] In its casual rejection of the reasoning in *McCoy*, the Court simply ignores this portion of the opinion:

"Wisconsin's Rule merely requires that the attorney go one step further. Instead of relying on an unexplained assumption that the attorney has discovered law or facts that completely refute the arguments identified in the

---

[1] "The danger that a busy or inexperienced lawyer might opt in favor of a one sentence letter instead of an effective brief in an individual marginal case is real, notwithstanding the dedication that typifies the profession. If, however, counsel's ultimate evaluation of the case must be supported by a written opinion 'referring to anything in the record that might arguably support the appeal,' the temptation to discharge an obligation in summary fashion is avoided, and the reviewing court is provided with meaningful assistance." *Nickols*, 454 F. 2d, at 470 (citation and footnotes omitted) (quoting *Anders* v. *California*, 386 U. S. 738, 744 (1967)).

brief, the Wisconsin court requires additional evidence of counsel's diligence. This requirement furthers the same interests that are served by the minimum requirements of *Anders*. Because counsel may discover previously unrecognized aspects of the law in the process of preparing a written explanation for his or her conclusion, the discussion requirement provides an additional safeguard against mistaken conclusions by counsel that the strongest arguments he or she can find are frivolous. Just like the references to favorable aspects of the record required by *Anders*, the discussion requirement may forestall some motions to withdraw and will assist the court in passing on the soundness of the lawyer's conclusion that the appeal is frivolous." *McCoy*, 486 U. S., at 442; see also *Penson*, 488 U. S., at 81–82.

In short, "simply putting pen to paper can often shed new light on what may at first appear to be an open-and-shut issue." *Id.*, at 82, n. 4. For this reason, the Court is quite wrong to say that requiring counsel to articulate reasons for its conclusion results in "less effective advocacy." *Ante*, at 272.[2]

An appellate court that employed a law clerk to review the trial transcripts in all indigent appeals in search of arguable error could be reasonably sure that it had resolved all of those appeals "in a way that is related" to their merits. It would not, however, provide the indigent appellant with anything approaching representation by a paid attorney. Like

---

[2] The *Wende* procedure at issue in this case requires a "summary of the proceedings and facts," but does not require counsel to raise any legal issues. *People* v. *Wende*, 25 Cal. 3d 436, 438, 600 P. 2d 1071, 1072 (1979); see also *ante*, at 265. This procedure plainly does not serve the above purpose, since it does not force counsel to "put pen to paper" regarding those things most relevant to an appeal—legal issues. Accordingly, and contrary to the Court's assertion, *ante*, at 280–281, this summary does not improve upon the procedure rejected in *Anders*—a "bare conclusion" by the attorney that an appeal is without merit. 386 U. S., at 742.

California's so-called *Wende* procedure, it would violate the "principle of substantial equality" that was described in *Anders* and *McCoy* and has been a part of our law for decades. *McCoy*, 486 U. S., at 438; *Anders*, 386 U. S., at 744.

JUSTICE SOUTER, with whom JUSTICE STEVENS, JUSTICE GINSBURG, and JUSTICE BREYER join, dissenting.

A defendant's right to representation on appeal is limited by the prohibition against frivolous litigation, and I realize that when a lawyer's corresponding obligations are at odds with each other, there is no perfect place to draw the line between them. But because I believe the procedure adopted in *People* v. *Wende*, 25 Cal. 3d 436, 600 P. 2d 1071 (1979), fails to assure representation by counsel with the adversarial character demanded by the Constitution, I respectfully dissent.

I

Although the Sixth Amendment guarantees trial counsel to a felony defendant, see *Gideon* v. *Wainwright*, 372 U. S. 335 (1963), the Constitution contains no similarly freestanding, unconditional right to counsel on appeal, there being no obligation to provide appellate review at all, see *Ross* v. *Moffitt*, 417 U. S. 600, 606 (1974). When a State elects to provide appellate review, however, the terms on which it does so are subject to constitutional notice. See, *e. g., Griffin* v. *Illinois*, 351 U. S. 12, 18 (1956); *Rinaldi* v. *Yeager*, 384 U. S. 305, 310 (1966); *Evitts* v. *Lucey*, 469 U. S. 387, 393 (1985).

In a line of cases beginning with *Griffin*, this Court examined appellate procedural schemes under the principle that justice may not be conditioned on ability to pay, see generally *Ross, supra,* at 605–609. Even though "[a]bsolute equality is not required," *Douglas* v. *California*, 372 U. S. 353, 357 (1963), we held in *Douglas* that when state criminal defendants are free to retain counsel for a first appeal as of right,

the Fourteenth Amendment[1] requires that indigent appellants be placed on a substantially equal footing through the appointment of counsel at the State's expense. See *McCoy* v. *Court of Appeals of Wis., Dist. 1,* 486 U. S. 429, 438 (1988) (referring to "principle of substantial equality").

Two services of appellate counsel are on point here. Appellate counsel examines the trial record with an advocate's eye, identifying and weighing potential issues for appeal. This is review not by a dispassionate legal mind but by a committed representative, pledged to his client's interests, primed to attack the conviction on any ground the record may reveal. If counsel's review reveals arguable trial error, he prepares and submits a brief on the merits and argues the appeal.

The right to the first of these services, a partisan scrutiny of the record and assessment of potential issues, goes to the irreducible core of the lawyer's obligation to a litigant in an adversary system, and we have consistently held it essential to substantial equality of representation by assigned counsel. "The paramount importance of vigorous representation follows from the nature of our adversarial system of justice." *Penson* v. *Ohio,* 488 U. S. 75, 84 (1988). See, *e. g., Ellis* v. *United States,* 356 U. S. 674, 675 (1958) *(per curiam); Douglas, supra,* at 357–358; *McCoy, supra,* at 438. The right is unqualified when a defendant has retained counsel, and I can imagine no reason that it should not be so when counsel has been appointed.

Because the right to the second service, merits briefing, is not similarly unqualified, however, the issue we address

---

[1] The *Griffin* line of cases has roots in both due process and equal protection, see *M. L. B.* v. *S. L. J.,* 519 U. S. 102, 120 (1996), but we have noted that "[m]ost decisions in this area have rested on an equal protection framework . . . ," *Bearden* v. *Georgia,* 461 U. S. 660, 665 (1983). See also *Ross* v. *Moffitt,* 417 U. S. 600, 611 (1974) (noting that right to appellate counsel "is more profitably considered under an equal protection analysis").

today arises. The limitation on the right to a merits brief is that no one has a right to a wholly frivolous appeal, see *Anders* v. *California,* 386 U. S. 738, 742 (1967), against which the judicial system's first line of defense is its lawyers. Being officers of the court, members of the bar are bound "not to clog the courts with frivolous motions or appeals," *Polk County* v. *Dodson,* 454 U. S. 312, 323 (1981); see also *McCoy, supra,* at 436, and this is of course true regardless of a lawyer's retained or appointed status in a given case. The problem to which *Anders* responds arises when counsel views his client's appeal as frivolous, leaving him duty barred from pressing it upon a court.[2]

The rub is that although counsel may properly refuse to brief a frivolous issue and a court may just as properly deny leave to take a frivolous appeal, there needs to be some reasonable assurance that the lawyer has not relaxed his partisan instinct prior to refusing,[3] in which case the court's review could never compensate for the lawyer's failure of advocacy. A simple statement by counsel that an appeal has no merit, coupled with an appellate court's endorsement of counsel's conclusion, gives no affirmative indication that anyone has sought out the appellant's best arguments or championed his cause to the degree contemplated by the adversary system. Nor do such conclusions acquire any implicit per-

---

[2] *Anders* addressed the problem as confronted by assigned counsel, though in theory it can be equally acute when counsel is retained. It is unlikely to show up in practice, however. Paying clients generally can fire a lawyer expressing unsatisfying conclusions and will often find a replacement with a keener eye for arguable issues or a duller nose for frivolous ones. As a practical matter, the States may find it too difficult or costly to prevent moneyed appellants from wasting their own resources, and those of the judicial system, by bringing frivolous appeals. This does not mean, however, that the States are obligated to subsidize such efforts by indigents.

[3] An assurance, that is, that he has not become what is known around the Los Angeles County Jail as a "'dumptruck.'" Reply Brief for Petitioner 1.

suasiveness through exposure to an interested opponent's readiness to mount a challenge. The government is unlikely to dispute or even test counsel's evaluation; one does not berate an opponent for giving up. To guard against the possibility, then, that counsel has not done the advocate's work of looking hard for potential issues, there must be some prod to find any reclusive merit in an ostensibly unpromising case and some process to assess the lawyer's efforts after the fact. A judicial process that renders constitutional error invisible is, after all, itself an affront to the Constitution. See *Penson, supra,* at 81–82.

In *Anders,* we devised such a mechanism to ensure respect for an appellant's rights. See *Penson, supra,* at 80. A lawyer's request to withdraw on the ground that an appeal is frivolous "must . . . be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders,* 386 U. S., at 744. This simply means that counsel must do his partisan best, short of calling black white, to flag the points that come closest to being appealable; the lawyer's job is to state the issues that give the defendant his best chances to prevail, even if the best comes up short under the rule against trifling with the court. "[T]he court—not counsel—," we continued, "then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Ibid.*

*Anders* thus contemplates two reviews of the record, each of a markedly different character. First comes review by the advocate, the defendant's interested representative. His job is to identify the best issues the partisan eye can spot. Then comes judicial review from a disinterested judge, who asks two questions: whether the lawyer really did function as a committed advocate, and whether he misjudged the legitimate appealability of any issue. In reviewing the advocate's work, the court is responsible for assuring that counsel has gone as far as advocacy will take him with the best issues undiscounted. We have repeatedly de-

scribed the task of an appellate court in terms of this dual responsibility. "'First, [the court] must satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal. Second, it must determine whether counsel has correctly concluded that the appeal is frivolous.'" *Penson*, 488 U. S., at 83 (quoting *McCoy*, 486 U. S., at 442).

*Griffin* and *Anders* thus require significantly more than the abstract evaluation of the merits of conceivably appealable points. Without the assurance that assigned counsel has done his best as a partisan, his substantial equality to a lawyer retained at a defendant's expense cannot be assumed. And without the benefit of the lawyer's statement of strongest claims, the appellate panel cannot act as a reviewing court, but is relegated to an inquisitorial role.

It is owing to the importance of assuring that an adversarial, not an inquisitorial, system is at work that I disagree with the Court's statement today that our cases approve of any state procedure that "reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." *Ante*, at 276–277. A purely inquisitorial system could satisfy that criterion, and so could one that appoints counsel only if the appellate court deems it useful. But we have rejected the former and have explicitly held the latter unconstitutional, see *Douglas*, 372 U. S., at 355, the reason in each case being that the Constitution looks to the means as well as to the ends.[4] See *Singer* v. *United States*, 380 U. S. 24, 36 (1965) ("The Constitution recognizes an adversary system as the proper method of determining guilt . . ."). See also, *e. g.*, *Penson, supra*, at 87 ("A criminal appellant is entitled to a single-minded advocacy . . .");

---

[4] Of course, if appellate review is not constitutionally required, States may well be able to impose nonadversarial review on all appellants. They may not, however, reserve the adversary system for those able to afford counsel.

*Strickland* v. *Washington,* 466 U. S. 668, 685 (1984) ("The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to reach just results"); *United States* v. *Cronic,* 466 U. S. 648, 656 (1984) ("Thus, the adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate'") (quoting *Anders, supra,* at 743).

## II

We have not held the details of *Anders* to be exclusive, but it does make sense to read the case as exemplifying what substantial equality requires on behalf of indigent appellants entitled to an advocate's review and to reasonable certainty that arguable issues will be briefed on their merits. With *Anders* thus as a benchmark, California's *Wende* procedure fails to measure up. Its primary failing is in permitting counsel to refrain as a matter of course from mentioning possibly arguable issues in a no-merit brief; its second deficiency is a correlative of the first, in obliging an appellate court to search the record for arguable issues without benefit of an issue-spotting, no-merit brief to review. See 25 Cal. 3d, at 440–442, 600 P. 2d, at 1074–1075.

Although *Wende* assumes that counsel will act as an advocate, see *id.,* at 441–442, 600 P. 2d, at 1075, it fails to assure, or even promote, the partisan attention that the Constitution requires. While the lawyer must summarize the procedural and factual history of the case with citations to the record, nothing in the *Wende* scheme requires counsel to show affirmatively, subject to evaluation, that he has made the committed search for issues and the advocate's assessment of their merits that go to the heart of appellate representation in our adversary system. It begs the question to say that "[c]ounsel's inability to find any arguable issues may readily be inferred from his failure to raise any," *id.,* at 442, 600 P. 2d, at 1075, and it misses the point to argue that the

indigent appellant is adequately protected because the lawyer assigned to a case under California's assigned counsel scheme may not file a *Wende* brief without the approval of a supervisor. The point is the need for some affirmative and express indicator that an advocate has been at work, in the form of a product that an appellate court can specifically review.[5] Thus *Anders* requires counsel to flag the best issues for the sake of keeping counsel on his toes and giving focus to judicial review of his judgment. *Wende* on the other hand requires no indication of conceivable issues and hence nothing specifically reviewable by a court bound to preserve the system's adversary character. *Wende* does no more to protect the indigent's right to advocacy than the no-merit letter condemned in *Anders*, or the conclusory statement disapproved in *Penson*.

On like reasoning, *Wende* is deficient in relying on a judge's nonpartisan review to assure that a defendant suffers no prejudice at the hands of a lawyer who has failed to document his best effort at partisan review. Exactly because our system assumes that a lawyer committed to a client is the most dependable guardian of the client's interest, see *supra*, at 296–297, we have consistently rejected procedures leaving the determination of frivolousness to the court in the first instance, see *Douglas, supra*, at 355–356, or to the court following a conclusory declaration by counsel, see *Penson, supra*, at 81–82, or to the court assisted by counsel in the role of *amicus curiae*, see *Ellis*, 356 U. S., at 675. The defect in these procedures is their entire reliance on review by a detached magistrate who does not apply the partisan scrutiny in the first instance that defendants with paid lawyers get as a matter of course.

---

[5] Since the state petitioner's claims that the lawyer's unrevealing and conclusory certification has been approved by a superior are neither here nor there on my analysis, I need not evaluate assertions by *amicus* Delgado that there is no scheme of assigned representation uniform throughout the State, see Brief for Jesus Garcia Delgado as *Amicus Curiae* 8.

It goes without saying, too, that *Wende*'s reliance on judges to start from scratch in seeking arguable issues adds substantially to the burden on the judicial shoulders. While I have no need to decide whether this drawback of the *Wende* scheme is of constitutional significance, it raises questions that certainly underscore the constitutional failing of relying on judicial scrutiny uninformed by counsel's partisan analysis. In an *amicus* brief filed in this case, 13 retired justices of the Supreme Court or Courts of Appeal of California have pointed out the "risk that the review of the cold record [under the *Wende* scheme] will be more perfunctory without the issue-spotting guidance, and associated record citations, of counsel." Brief for Retired Justice Armand Arabian et al. as *Amici Curiae* 5. The *amici* have candidly represented that "[w]hen a California appellate court receives a *Wende* brief, it assigns the case to a staff attorney who prepares a memorandum analyzing all possible legal issues in the case. Typically, the staff attorney then makes an oral presentation to the appellate panel . . . ." *Id.*, at 6. When the responsibility of counsel is thrown onto the court, the court gives way to a staff attorney; it could not be clearer that *Wende* is seriously at odds with the respective obligations of counsel and the courts as contemplated by the Constitution.

## III

Unlike the Court, I reach the question of appropriate relief. With respect to respondent's *Anders* claim, the Court of Appeals premised its disposition on finding that two potentially meritorious issues showed that Robbins had been prejudiced by the failure of the *Wende* scheme to result in their litigation. I think it unnecessary to invoke such findings, however, and would hold for Robbins simply because of the failure to provide an advocate's analysis of issues as a predicate of court review. Without more, I would, in effect, require the state courts to reinstate the appeal for treatment consistent with the *Anders* application of *Griffin*.

It is true, of course, that before relief is normally granted for want of adequate assistance of trial counsel, a defendant must show not only his lawyer's failure to represent him with reasonable competence (demonstrated here by the failure to file an advocate's issue-spotting brief), but also a "reasonable probability" that competent representation would have produced a different result in his case, see *Strickland*, 466 U. S., at 694. But the assumption behind *Strickland*'s prejudice requirement is that the defendant had a lawyer who was representing him as his advocate at least at some level, whereas that premise cannot be assumed when a defendant receives the benefit of nothing more than a *Wende* brief. In a *Wende* situation, nominal counsel is functioning merely as a friend of the court, helping the judge to grasp the structure of the record but not even purporting to highlight the record's nearest approach to supporting his client's hope to appeal. Counsel under *Wende* is doing less than the judge's law clerk (or a staff attorney) might do, and he is doing nothing at all in the way of advocacy. When a lawyer abandons the role of advocate and adopts that of *amicus curiae*, he is no longer functioning as counsel or rendering assistance within the meaning of the Sixth Amendment. See *Cronic*, 466 U. S., at 654–655. Since the apparently missing ingredient of the advocate's analysis goes to the very essence of the right to counsel, a lawyer who does nothing more than file a *Wende* brief is closer to being no counsel at all than to being subpar counsel under *Strickland*.

This, I think, is the answer to any suggestion that a specific assessment of prejudice need be shown in order to get relief from *Wende*. A complete absence of counsel is a reversible violation of the constitutional right to representation, even when there is no question that at the end of the day the smartest lawyer in the world would have watched his client being led off to prison. See *Cronic, supra*, at 658–659; cf. *Rodriquez* v. *United States*, 395 U. S. 327 (1969). We do not ask how the defendant would have fared if he had

been given counsel, and we should not look to what sort of appeal might have ensued if an appellant's lawyer had flagged the points that came closest to appealable issues. Such a result is equally consistent with our cases holding a violation of due process to be complete when a defendant is denied a right to the appeal he is otherwise entitled to pursue. See *Peguero* v. *United States*, 526 U. S. 23, 30–31 (1999) (O'CONNOR, J., concurring); *Rodriquez, supra,* at 330.[6]

This conclusion was anticipated in *Penson,* in which we dealt with the violation of *Anders* standards when counsel was allowed to withdraw without supplying the court with his best effort to identify appealable weaknesses, and prior to any judicial determination that counsel had missed nothing in finding no arguable appellate issues in the record. The appellate court in *Penson* subsequently identified arguable issues but thought the appointment of new counsel unnecessary after finding that any legitimately appealable issues would be losers. This Court recognized a presumption of prejudice without more, for purposes of both *Strickland* and *Chapman* v. *California,* 386 U. S. 18 (1967). See *Penson,* 488 U. S., at 85–86. Although the state court's failure to appoint counsel after identifying issues made *Penson* an egregious case, *id.,* at 83, the failure of advocacy and consequent constructive absence of counsel was clear even at the point at which the lawyer withdrew, *id.,* at 82, and the presumption of prejudice applicable then is applicable in this case now.

There is practical sense as well as good theory behind this presumption of prejudice, for any requirement to demonstrate prejudice specifically would often place federal judges on habeas in highly precarious positions calling for judgments that state judges are generally better qualified to

---

[6] Although this habeas proceeding began on February 24, 1994, and is therefore not governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), see *Lindh* v. *Murphy,* 521 U. S. 320 (1997), the result should be no different in a post-AEDPA case. See *infra,* at 303.

make. Since there will have been no advocate's help in ana-
lyzing the record on the direct state appeal, and since counsel
may well have been absent formally as well as constructively
in any state postconviction proceedings, the federal judge
would be looking for (among other things) previously uniden-
tified state-law issues not previously waived. One could not
ask for a more certain guarantee of inefficient and time con-
suming judicial effort.[7]

What remains is only to say a word about the State's argu-
ment that relief in this case is barred under *Teague* v. *Lane*,
489 U. S. 288 (1989), as requiring application of a new rule of
law not clearly entailed by our prior holdings. The argu-
ment seems to be that California has relied on *Wende* for so
long that any disapproval from a federal court at this junc-
ture is some sort of novelty (resulting from the failure of
other state defendants to reach the federal courts earlier
with *Wende* objections). The obvious answer is that the ap-
plication of *Douglas* and *Griffin* standards to meritless ap-
peals has been subject to repeated explanation starting with
*Anders* and echoed in *McCoy* and *Penson*. Once general
rules are announced they do not become "new" again with
every particular violation that may subsequently occur. See
*Saffle* v. *Parks*, 494 U. S. 484, 491–492 (1990) (discussing ap-
plication of the rule of *Jurek* v. *Texas*, 428 U. S. 262 (1976),

---

[7] Since a *Wende* case is like a denial of counsel, it would make no more
sense to give the State an option to demonstrate no prejudice under *Chap-
man* v. *California*, 386 U. S. 18 (1967), or *Brecht* v. *Abrahamson*, 507 U. S.
619 (1993), than it would to require a defendant to show it under *Strick-
land* v. *Washington*, 466 U. S. 668 (1984). The presumption of prejudice
does not, however, promise relief to every California defendant whose ap-
peal was dismissed as frivolous and against whom the statute of limita-
tions has not run, see 28 U. S. C. § 2244(d)(1) (1994 ed., Supp. III). One
submission before us claims that the *Wende* scheme has not supplanted
*Anders* v. *California*, 386 U. S. 738 (1967), throughout California. See
Brief for Jesus Garcia Delgado as *Amicus Curiae* 9–10. Briefs that meas-
ure up according to the standards adumbrated in *Anders* would of course
receive standard *Strickland* analysis.

in *Penry* v. *Lynaugh*, 492 U. S. 302 (1989)). The same point, of course, would answer any objection under the AEDPA that an *Anders* petitioner was seeking to go beyond "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U. S. C. § 2254(d)(1) (1994 ed., Supp. III).

\* \* \*

The *Wende* procedure does not assure even the most minimal assistance of counsel in an adversarial role. The Constitution demands such assurances, and I would hold Robbins entitled to an appeal that provides them.