Filed 5/21/15  P. v. Powell CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JONATHAN AJ DERAN POWELL,<br><br>  Defendant and Appellant. | B259879<br><br>(Los Angeles County<br>Super. Ct. No. YA086690) |

         APPEAL from a judgment of the Superior Court of Los Angeles County, Eric C. Taylor, Judge.  Affirmed.

         Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

         No appearance for Respondent.

_____

## INTRODUCTION

Jonathan AJ Deran Powell appeals from a judgment and sentence following his conviction on two counts of attempted willful, deliberate and premeditated murder. He contends that a juror was biased; that he was denied his *Miranda*[1] rights; that the testimony of one of his victims was contradictory and not credible; and that the prosecutor committed misconduct during closing. Finding no reversible error, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 10, 2012, at around 7:00 p.m., Darahl N. and Benisha J., both juveniles at the time, were shot by appellant. Darahl, an African-American male, was a member of the predominantly Hispanic gang, the South Los. A fellow gang member -- Darahl's "homie" -- was Benisha's boyfriend. At around 6:00 p.m., Darahl was "tagging" -- spray-painting -- the street in front of Benisha's house when he was approached by five people, including appellant. Appellant was a member of a rival gang, the Hoover Criminals. Appellant asked Darahl which gang he belonged to, and Darahl replied "I'm from South Los." An argument broke out, and the parties began insulting each other's gang. Someone then said, "This nigga from Waflo is going to die tonight." "Waflo" is a derogatory term used to refer to the South Los gang. Darahl went around the corner to his house to get his backpack. When he came back to the scene, appellant and the other individuals had left.

An hour later, appellant came back alone. He asked Benisha, who was standing on the porch of her house, whether she was in a gang. When she said no, he left. Minutes later, appellant returned. From the house next door, appellant fired a handgun multiple times toward Benisha's house. Darahl was hit in the lung, and Benisha was struck in her chest area. The police were called, and both

---

[1]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

juveniles were taken to the hospital.

Appellant was caught on the next door neighbor's security surveillance night vision camera. The videotape was played for the jury. While in custody, appellant confessed to the shootings to a fellow gang member -- who was a police informant and was wearing a "wire." A portion of the audio from the conversation was played for the jury. Appellant also confessed to the shootings during an audiotaped police interview. The audiotape was played for the jury. A gang expert opined that the shootings were committed for the benefit of the Hoover Criminals gang.

The jury found appellant guilty of the attempted willful, deliberate and premeditated murders of Darahl and Benisha (Pen. Code, §§ 664/187, subd. (a)). It also found true the allegation that a principal personally and intentionally discharged a firearm which caused great bodily injury (Pen. Code, § 12022.53, subds. (c), (d) & (e)(1)), and that the crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(C)). The trial court sentenced appellant to a total of 80 years to life in state prison. Appellant timely filed a notice of appeal.

## DISCUSSION

After examining the record, appointed appellate counsel filed a brief raising no issues, but asking this court to independently review the record on appeal pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441-442. (See *Smith v. Robbins* (2000) 528 U.S. 259, 264.) Appellant filed a supplemental letter brief, asking this court to consider whether he was denied a fair trial because (1) juror No. 10 was biased; (2) appellant was not advised of his *Miranda* rights before he gave his confession to the police; (3) Benisha's testimony was not credible; and (4) the prosecutor committed misconduct during closing.

3

A.     *Juror Misconduct*

During the defense case, a defense audio/video expert testified about the audio from the police interview and the video from the surveillance camera. Juror No. 10 sent a note to the court, indicating he had questions about the expert's testimony based on the juror's expertise in audio and video surveillance. A sidebar was held. When asked whether he could ignore his training and not share it with the other jurors, juror No. 10 stated that he would not share his training with the other jurors, but that "facts are facts in my brain, and some things were said that will go against my training and education." When asked whether he could keep an open mind and be fair to both sides, juror No. 10 responded, "Yes." Defense counsel expressed doubt that juror No. 10 would be fair and asked that he be excused. The court denied the request, noting, inter alia, that juror No. 10's questions derived from knowledge that can be acquired from "common experience looking for nighttime cameras."

Appellant contends that juror No. 10 should have been dismissed as biased. We have independently reviewed the relevant transcript excerpts, and find no evidence of bias. We note that jurors may bring to their deliberations "knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience." (*People v. Danks* (2004) 32 Cal.4th 269, 302.) That is what juror No. 10 was doing. Appellant also faults juror No. 10 for failing to reveal in voir dire that his job was "video surveillance [and] audio surveillance," but appellant has not presented a record showing any concealment. Thus, we find no error in the trial court's decision not to dismiss juror No. 10.

B.     <u>*Miranda*</u> Advisements

Appellant next contends that he was not advised of all his *Miranda* rights during the audiotaped police interview. The transcript of the audio reflects that appellant was advised of some of his *Miranda* rights and waived them. However,

4

the police officers who interviewed appellant testified that the audiotape was incomplete, and that appellant was advised of -- and waived -- all of his *Miranda* rights. On this record, appellant has not demonstrated that it was error to admit his taped statements to the police.

### C. *Benisha's Testimony*

Appellant further contends there was insufficient evidence to support his convictions, arguing that Benisha's testimony conflicted with his confession to the police informant. Specifically, Benisha testified that she was shot in the back and the bullet passed through her left shoulder, while appellant told the informant that he had shot her in her "titties." Appellant also notes that Benisha's testimony was inconsistent about whom she saw speaking with Darahl when he was tagging. We reject appellant's claim for the reasons set forth by the Supreme Court: "The impeachment arguments that [appellant] repeats against [Benisha] involve simple conflicts in the evidence that were for the jury to resolve. [Citation.] Of course, 'it is not a proper appellate function to reassess the credibility of the witnesses.' [Citation.] To the extent [appellant] also argues that [Benisha's] testimony was inherently incredible, we reject that claim too. ""To warrant the rejection of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.""" [Citation.] [Appellant] fails to make such a showing." (*People v. Friend* (2009) 47 Cal. 4th 1, 41.) Moreover, even without Benisha's testimony, appellant's confessions were sufficient to support his convictions.

### D. *Prosecutorial Misconduct*

Finally, appellant contends that the prosecutor committed misconduct during closing, but identifies no specific misconduct. We have reviewed the closing arguments, and find no misconduct.

This court has examined the entire record in accordance with *People v. Wende*, *supra*, 25 Cal.3d at pages 441 to 442, and is satisfied appellant's attorney has fully complied with the responsibilities of counsel, and no arguable issues exist.  Accordingly, we affirm the judgment of conviction.

**DISPOSITION**

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**




MANELLA, J.


We concur:



WILLHITE, Acting P. J.



COLLINS, J.

6